## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

### F. H. HENDERSON v. C. A. FOSTER.

September 18, 1924.

1. APPEAL AND ERROR—*Conclusiveness of Verdict—Where there is Evidence to Support it.*—The verdict of a jury is conclusive if there is any evidence to support it.

2. PLEDGE AND COLLATERAL SECURITY—*Agency—Borrower of Stock Pledged to Secure His Debt as Agent of Pledgee in Attempt to Secure Consent of Owner to Further Hypothecation—Case at Bar.*—A borrower of stock, with the consent of the owner, pledged it to secure his debt. At the instance of the pledgee he went to the owner of the stock to secure his consent to further hypothecate the stock. In this respect he was the agent of the pledgee and it was his duty to inform the pledgee of the conditions on which the owner would further permit a pledge of the stock. This duty he failed to preform. Instead of first securing a note of his brother, pursuant to the terms of his agreement with the owner, he executed on that day a new note to the pledgee for a larger amount than the stock was first pledged to secure, with his wife as surety, and pledged the stock contrary to his written agreement with the owner.

   *Held:* That the owner of the stock might maintain detinue against the pledgee.

3. PLEDGE AND COLLATERAL SECURITY—*Pledgee of Corporate Stock by Borrower of the Stock—Action by Owner Against Pledge —Evidence.*—In an action by the owner of stock, who had lent it to another to pledge to secure a certain debt of the other against the pledgee, a bank cashier testified that the pledgee's brother had offered the stock as collateral to secure another loan and that he had informed the owner of this offer.

   *Held:* That this evidence was admissible to show how the plaintiff first ascertained that his stock had been pledged to secure this additional debt and to corroborate the statement of plaintiff that as soon as he acquired this information he went immediately to the defendant and offered to pay the first loan and demanded his stock.

4. PLEDGE AND COLLATERAL SECURITY—*Action by Owner of Stock Against Pledgee—Evidence.*—In an action by the owner of stock, who had lent it to another, to recover the stock from a pledgee, it was claimed by the pledgee that the stock had also been hypothecated to secure

a note from the borrower of the stock to his brother, which note he had bought from his brother.

*Held:* That testimony tending to show the ownership of the second note was admissible.

5. APPEAL AND ERROR—*Harmless Error—Self-Serving Statements.*—In an action by the owner of stock against its pledgee, plaintiff's son testified as to the finding of an agreement concerning the stock in his father's safe and his father's explanation thereof.

*Held:* That while this evidence was self-serving and immaterial, it could not possibly have prejudiced the defendant, and was, therefore, harmless error.

6. INSTRUCTIONS—*Object of Instructions—Instructions Read Together.*—The real object of instructions is to enlighten the minds of the jury on the law of the particular case, and where the court can see that this object has been accomplished and the law of the case has been fairly submitted to the jury, it will not inquire whether it was done by one instruction or by more than one.

7. INSTRUCTIONS—*Multiplication of Instructions.*—The multiplication of instructions does not tend to enlighten the jury and is a practice to be avoided.

8. PLEDGE AND COLLATERAL SECURITY—*Pledge of Stock Indorsed in Blank—Case at Bar.*—It is ordinarily true that where stock is indorsed in blank, the holder thereof is presumed to be the true owner. In the instant case, however, the borrowed stock had been in the possession of the defendant for ten months with full knowledge that it was the property of the plaintiff, and that it could not be further pledged without the consent of the plaintiff. Knowing this, defendant sent the borrower of the stock as his agent to secure such assent and if the same was not procured, the burden of the loss occasioned by the unfaithfulness of his agent must be borne by defendant.

9. PLEDGE AND COLLATERAL SECURITY—*Pledge of Stock—Action by Owner Against Pledgee—Instructions.*—In the instant case an action by the owner of stock who had lent it to one H. to pledge to defendant, an instruction which stated that a certain note was to be executed and delivered to plaintiff before H. was authorized to pledge the same stock to defendant was erroneous, as defendant had the stock in his possession at the time, and it was purely a question as to whether or not defendant could hold the stock as a further pledge for another note.

10. PLEDGE AND COLLATERAL SECURITY—*Pledge of Stock—Action by Owner Against Pledgee—Instructions.*—In an action by the owner of stock who had lent it to another to pledge to secure the other's debt to the pledgee, an instruction ignoring the conditions in a written agreement between the owner and the borrower and without any reference to an alleged subsequent ratification of the pledge of the stock was erroneous.

11.  PLEDGE AND COLLATERAL SECURITY—*Pledge of Stock—Action by Owner Against Pledgee—Instructions.*—In an action by the owner of stock who had lent it to another to pledge to secure the other's debt to the pledgee, there was no error in refusing an instruction, which told the jury that defendant had the absolute right to hold the stock regardless of the conditions imposed when he first obtained possession of the stock.

12.  PLEDGE AND COLLATERAL SECURITY—*Pledge of Stock—Action by Owner Against Pledgee—Instructions.*—In an action by the owner of stock who had lent it to another to pledge to secure the other's debt to the pledgee, an instruction that assumed that defendant was the *bona fide* holder of the stock as security for another note, though defendant admitted that he knew the pledgor had to get the consent of the owner of the stock before he could pledge it as such security, was erroneous.

13.  PLEDGE AND COLLATERAL SECURITY—*Pledge of Stock—Action by Owner Against Pledgee—Instructions.*—In an action by the owner of stock who had lent it to another to pledge to secure the other's debt to the pledgee, an instruction which ignores admitted and material facts is erroneous.

14.  PLEDGE AND COLLATERAL SECURITY—*Pledge of Stock—Action by Owner Against Pledgee—Instructions—Evidence.to Support.*—Where there is no evidence to justify the giving of an instruction it is properly refused.

15.  ACTIONS—*Maturity of Cause of Actions.*—An action at law can not be maintained before the cause of action matures.

16.  DETINUE—*Requisites.*—In order to maintain the action of detinue these points are necessary: (1) The plaintiff must have property in the thing sought to be recovered; (2) he must have the right to its immediate possession; (3) it must be capable of identification; (4) the property must be of some value; (5) the defendant must have had possession at some time prior to the institution of the action.

17.  TENDER—*Payment into Court—Questions of Law and Fact.*—Where the facts are in dispute, it is for the jury to say whether a tender was made, or waived, or made to the wrong person, or whether the sum tendered was in full satisfaction and received on those terms, or was made to buy peace, and, generally, the question as to whether a tender was made conditionally, is for the jury. But the question whether the money has been brought into court is for the court to determine as an act done in its presence and shown by the records, and where the facts bearing upon a question of tender are uncontroverted, the question whether a tender has been made is purely a question of law.

18.  TENDER—*Questions of Law and Fact—Court Telling Jury there has been a Tender.*—In the instant case there was no dispute as to what oc-

curred between the parties on the question of tender and upon the facts. The court, instead of leaving the question open for the jury to pass upon, could, as a matter of law, have told the jury there was a tender under the evidence.

19. TENDER—*Tender Declined—Case at Bar.*—In the instant case, an action of detinue to recover pledged stock, both the plaintiff and his attorney offered to pay the defendant the debt due for which the stock was pledged. This offer the defendant declined, not because the money was not actually produced, but because he claimed that a larger amount was due him than the amount offered.

*Held:* That this was sufficient tender.

20. TENDER—*Actual Production of Money—Refusal to Accept.*—The actual production of the money will be dispensed with when the party to whom the offer is made refuses to receive the money before it is actually produced, and bases his refusal, not on the ground that it is not produced, nor on the ground that the amount produced is not the exact amount, but on some collateral and entirely distinct ground.

21. DETINUE—*Pledge of Stock—Tender—Right to Possession—Payment into Court.*—In the instant case, an action of detinue by the owner of stock against the pledgee of the stock, the defendant having refused to receive the amount, afterwards found by the jury to be due him tendered by the plaintiff, the plaintiff, at the time of the institution of the action, had met the requirement that "he must have the right to its immediate possession." Thus being in the position to institute his action of detinue, he had the right to pay the money into court and stop the running of interest, as well as to secure to the defendant the amount due him.

Error to a judgment of the Circuit Court of Bedford city, in an action of detinue. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*A. S. Hester* and *Landon Lowry*, for the plaintiff in error.

*Nelson Sale* and *D. H. Kizer*, for the defendants in error.

CAMPBELL, J., delivered the opinion of the court.

C. A. Foster, the defendant in error, instituted in the Circuit Court of Bedford county his action of detinue against the plaintiff in error, to recover seventy-five shares of stock of the Barksdale-Foster Hardware Company, Inc., of the value of $7,500.00.

Hereafter Foster will be referred to as plaintiff and Henderson as defendant.

Upon the trial, on the issue joined, the jury found a verdict in favor of the plaintiff, and the court rendered judgment thereon, and thereupon the defendant applied for and obtained a writ of error.

The facts in evidence are as follows: C. A. Foster, C. E. Tucker and W. R. Holland were the principal stockholders and officers in the Big Four Grocery Company; the relations existing between the three were intimate and friendly.

In April, 1921, W. R. Holland became indebted to F. H. Henderson, the defendant, in the sum of $2,750.00, and also was indebted to W. C. Henderson, a brother of defendant, in the sum of $3,250.00, both debts being evidenced by the notes of Holland. The defendant demanding that his note be more firmly secured, Holland applied to his associate in business, the plaintiff, for assistance in securing collateral, and was loaned seventy-five shares of the capital stock of the Barksdale-Foster Hardware Company, with permission to use this stock as collateral to secure the note held by the defendant.

Holland, on April 6, 1921, deposited his stock with defendant and took from him a receipt, which reads as follows: "Received of Will R. Holland one stock of the Barks-

dale-Foster Hardware, seventy-five shares at $100.00 each, to use as collateral security. This is to state positively that Will R. Holland has not sold this stock to F. H. Henderson this April 6, 1921. · F. H. Henderson."

In January, 1922, defendant notified Holland he had become the owner of the note executed to W. C. Henderson and again demanded of Holland that he more firmly secure this note. Holland wrote to plaintiff asking permission to use the stock as collateral security for the W. C. Henderson note. This request plaintiff positively refused to comply with, stating he perhaps would have to borrow money for himself. This refusal was communicated to defendant. However, some time thereafter, either in February or March, Holland offered his brother, John T. Holland, as security to protect the loan of the stock and the following agreement was drawn up:

"Brookneal, Virginia.

"This article of agreement entered into this 23d day of March, 1922, between C. A. Foster, party of the first part, and Will R. Holland, party of the second part,

"Witnesseth:

"The party of the second part agrees to give the party of the first part his note for $7,500.00, endorsed by J. T. Holland to be used only as collateral security for an amount not to exceed $5,000.00 by the party of the first part.

"This note is given to secure the party of the first part for $7,500.00 of Barksdale-Foster Hardware Company stock that the party of the second part is using as collateral for $5,000.00 which is the property of the *part* of the first part.

(Signed) "C. A. Foster,
"Will R. Holland.

"Witness C. E. Tucker."

This note of indemnity was never delivered to plaintiff for the reason that John T. Holland refused to endorse the same.   From this point the evidence is conflicting.

The plaintiff contends that this agreement of March 23rd was put in a safe and nothing more thought of it until in April, 1922, his son, in looking over some papers, called his attention to the fact that there was no such note as the agreement called for, whereupon he told his son the said John T. Holland note had never been delivered.   He then told C. E. Tucker to call Holland's attention to his failure to deliver the collateral note called for in the agreement.   This Tucker did and Holland sent him, some sixty days after the agreement of March 23rd, a note for $7,500.00 endorsed by Nannie V. Holland, his wife.   He retained this note as collateral until the return of his stock but not with any intention of authorizing Holland to hypothecate his stock for the W. C. Henderson note.

In June, 1923, plaintiff further contends he heard for the first time that his stock was up to secure the W. C. Henderson note; that he also heard that the stock was being offered to secure a loan of W. C. Henderson's in the bank.   Upon receipt of this information, he went to see defendant and asked how much Holland owed him, to which defendant replied $1,500.00; he then told defendant: "I will get Holland to pay you, and if he will not I will do so and take up the stock."   To which defendant replied:   "But that is not all of it; it is up to secure the $3,250.00 note of Walter's."

It is virtually admitted by defendant that in the month of July plaintiff offered to pay him the sum of $1,500.00, the balance due on the note executed to him, and redeem the stock, but he declined to surrender the stock unless the $3,250.00 note was also paid; and that

this offer of payment was also made by Mr. Kiser, the attorney for plaintiff, but was refused for the same reason given plaintiff.

The testimony of Holland, which conflicts with that of plaintiff, is that after his brother refused to endorse his note to secure plaintiff, he offered Nannie V. Holland, his wife, as endorser, and that plaintiff accepted this note and authorized him to inform defendant that the stock could stand as collateral security for the entire debt due by him to defendant.

The following instructions were given by the court upon motion of the defendant:

"The court instructs the jury that if they believe from the evidence that C. A. Foster endorsed the said certificate of stock in blank and delivered the same to Will R. Holland to be used by the said Will R. Holland as collateral security for a debt due by said Will R. Holland to F. H. Henderson, in the sum of $2,750.00, and that at a later time the said Will R. Holland got the consent of the said C. A. Foster to use the said stock as collateral security for a note in the sum of $3,250.00 held by the said F. H. Henderson, with the understanding that Will R. Holland would deliver to the said C. A. Foster a note in the sum of $7,500.00, endorsed by John T. Holland; that said John T. Holland did not endorse such a note and that subsequently the said C. A. Foster consented to the use of said certificate of stock by the said Holland, the said Foster taking as security therefor the note of the said Will R. Holland and Nannie V. Holland, his wife; that said certificate of stock was delivered by said Holland to said Henderson as security to the said note and that the said note in the sum of $3,250.00 has not been paid, then the said C. A. Foster is estopped from asserting claim to the said stock until

the $3,250.00 note is paid, and if the said note has not been paid the jury must find for the defendant.

"The court instructs the jury that the burden is on the plaintiff to make out his case by a preponderance of the evidence."

Over the objection of the defendant, the court, of its own motion, gave this instruction:

"A. The court instructs the jury that if they believe from the evidence that the plaintiff, Foster, by himself and by his agent, his attorney, before the institution of this suit, went to the defendant, Frank Henderson, and told him 'I am ready to pay you any balance due on the $2,750.00 note which you hold against Holland, and for which my stock is collateral security. I want to pay you that and take in my stock,' without making any tender in dollars and cents, whereupon the defendant flatly refused to negotiate with him about the stock unless he would pay all that he owed him, and due him by W. R. Holland, including the note for $3,250.00 assigned him by his brother Walter, then the plaintiff has the right to bring his money into court in full of the $2,750.00 note to be paid to the defendant in case the jury should believe that he was entitled to recover."

The defendant tendered the following instructions which were refused:

"1. The court further instructs the jury that if they find from the evidence that W. R. Holland executed the collateral note on the 6th day of February, 1922, and delivered the same to F. H. Henderson, in which the seventy-five (75) shares of stock were put up as collateral securing said note, they should find for the defendant, unless they further find from the evidence that the said W. R. Holland put up said stock without being authorized so to do by C. A. Foster, and that F. H. Henderson had notice of the lack of such authority, and C. A.

Foster did not waive the giving of said note by accepting the note of W. R. Holland and *Mamie* V. Holland.

"2. The court further instructs the jury that the mere fact of the promise on the part of W. R. Holland to give C. A. Foster a note endorsed by his brother, John T. Holland, for the sum of $7,500.00 for the authority or right to put the same stock up as security for the payment of $3,250.00 to the said F. H. Henderson, will not give the said C. A. Foster the right to recover possession of said stock, unless the giving of said note was to be executed and delivered to the said C. A. Foster before the said W. R. Holland was authorized to put the same up with F. H. Henderson, securing said note of $3,250.00, and that the said F. H. Henderson had notice of this fact.

"3. The court further instructs the jury that if they find from the evidence that W. R. Holland had promised or agreed with C. A. Foster that he would execute a note endorsed by his brother, John T. Holland, for $7,500.00, and that C. A. Foster agreed upon the giving of said note; that W. R. Holland could put up the $7,500.00 Barksdale-Foster Hardware stock securing F. H. Henderson the sum of $3,250.00, and that the said note was never executed and delivered to the said C. A. Foster and the said C. A. Foster with full knowledge of this fact accepted, received and retained a note given by W. R. Holland and *Mamie* V. Holland for $7,500.00 in lieu of the said note that was to have been given by W. R. Holland and John T. Holland, then they should find for the defendant.

"4. The court instructs the jury if they believe from the evidence that C. A. Foster delivered the stock sued for to Will R. Holland, to be used by him as collateral security for a debt due by said Holland to F. H. Henderson, and even though said Henderson knew that said

stock belonged to said Foster, and he knew it was loaned by him to said Holland for that purpose, and said Holland did use said stock to secure a debt due said Henderson, and that said debt has not been paid by Holland to Henderson, then said Foster is entitled to recover said stock in this action.

"5. The court instructs the jury that in order for the plaintiff to recover in this action, he must prove that he had the right to the immediate possession of the property sued for in the declaration mentioned, at the time of the institution of said action, and, therefore, if the jury believes from the evidence that at the time this suit was brought F. H. Henderson lawfully held possession of the seventy-five shares of stock sued for, as collateral security for the balance due on the note of $3,250.00, made by Will R. Holland and wife to F. H. Henderson, and that there was a balance due on said note at the time of the institution of this action, then they must find for the defendant.

"6. The court instructs the jury if they believe from the evidence that C. A. Foster delivered the stock in question to Will R. Holland to secure an indebtedness of the said Will R. Holland to F. H. Henderson, in the sum not exceeding $5,000.00, and that the said Will R. Holland put said stock up as collateral security with the said Henderson to secure such indebtedness, not exceeding the sum of $5,000.00, and even though the said F. H. Henderson may have had notice that said stock was delivered by said Holland to be used as collateral security of the said indebtedness of the said Holland to the said Henderson, not to exceed $5,000.00, and that said stock was never used by the said Holland to secure an indebtedness in excess of the sum of $5,000.00, then the jury are instructed to find for the defendant.

"7. The court instructs the jury that if they believe

from the evidence that C. A. Foster endorsed the certificate of stock of the Barksdale-Foster Hardware Company in blank and delivered the same to Will R. Holland to be used by him as collateral security for an indebtedness of said Holland to Henderson; that said Holland did deliver said stock to the said Henderson for a security on an indebtedness of $2,750.00; and if they further believe from the evidence that at a later time Will R. Holland got permission from the said Foster to use said stock as collateral security for another indebtedness in the sum of $3,250.00, due to the said Henderson by said Holland, and that said Foster gave his consent therefor, with the understanding that John T. Holland and Will R. Holland would give their note to the said Foster in the sum of $7,500.00, and with that understanding the said Will R. Holland put said stock up with the said F. H. Henderson as collateral security for said note in the sum of $3,250.00, then the said C. A. Foster is estopped from asserting claim to the said certificate of stock in this action—even though John T. Holland did not endorse the said note in the sum of $7,500.00, and the jury must find a verdict for the defendant.

"8. The court further instructs the jury that if they find from the evidence that C. A. Foster endorsed the said certificate of stock in blank and delivered the same to W. R. Holland, who, in turn, delivered the same to F. H. Henderson for value, and that the said F. H. Henderson became a *bona fide* holder of said stock for value and without notice, other than this said stock had been loaned by said Foster to said Holland to be used by him as collateral security for the debt due by Holland to Henderson, then they should find for the defendant.

"9. The court instructs the jury if they believe from the evidence that C. A. Foster endorsed the certificate

of stock of the Barksdale-Foster Hardware Company in blank and delivered·said stock to Will R. Holland to be used by him as collateral security for a debt due by Holland to F. H. Henderson, and that Holland did deliver said stock to said Henderson as collateral security for said indebtedness, then they should find for the defendant.

"10. The court further instructs the jury that tender cannot be made after a suit is brought upon behalf of the plaintiff for the stock that was placed in the hands of F. H. Henderson to secure the $2,750.00 note, and if the jury should find from the evidence that no tender was made prior to the bringing of this suit on account of this note, then they should find for the defendant.

"11. The court instructs the jury in order for the plaintiff to maintain his action, he must aver and prove that he has a title to the property due with the present right of possession in itself, and this right of possession must be had at the time the action brought; therefore, if the jury believes from the evidence that C. A. Foster had put the stock in question in the hands of Will R. Holland, to be used by him as collateral security for the payment of the balance due on a note in the sum of $2,750.00, due by Holland to Henderson, and that the balance due on this note had not been paid at the time this action was brought, then they must find for the defendant.

"12. The court instructs the jury that if they find from the evidence Foster agreed to let W. R. Holland use the stock upon the promise of W. R. Holland to give his and John Holland's note without waiting for the execution of the note to the said C. A. Foster, then they should find for the defendant."

The first error assigned is because the verdict is contrary to the law and the evidence.

The discussion of this question is embraced within very narrow limits. There is a direct conflict between the plaintiff and W. R. Holland on the question of the authority of Holland to pledge the Barksdale-Foster Hardware Company stock to secure the W. C. Henderson note, held by the defendant.

[1] The jury has decided this question in favor of the plaintiff. It has been so often held by this court that the verdict of the jury is conclusive if there is any evidence to support it, that citation of authority is deemed unnecessary. The gist of the controversy, therefore, is, was there sufficient evidence to support the verdict?

The main contention of the defendant is that plaintiff is bound by the written contract of March 23, 1922, and that the court erred in permitting the plaintiff to testify as to any matters not embraced in the contract, and also in permitting C. E. Tucker to testify that the reason he used the words, "is using as collateral security," instead of "to be used," was because he knew the stock was then up for $2,750.00 and that Mr. Foster limited the use for more than $5,000.00, so he said which "is to be used."

It is further claimed that the plaintiff is estopped from claiming that the stock was put up by Holland without his authority, because the words "is using as collateral for $5,000.00" embraced the amount of the W. C. Henderson note of $3,250.00, as there was at that time only $1,750.00 due on the note of defendant. It is testified to by both the plaintiff and Holland that when the agreement of March 23rd was entered into, that they were of the firm belief that John T. Holland would secure the plaintiff for the further use of his stock as collateral.

[2] Holland, in no sense of the word, was the agent of plaintiff at any time. He testifies that he went at the

instance of the defendant to secure the consent of the plaintiff to further hypothecate the stock. In this respect he was the agent of the defendant, and it was his duty to inform the defendant of the conditions on which plaintiff would further pledge the stock. This duty he failed to perform. Instead of first securing the note of his brother pursuant to the terms of the agreement, he executed on that day a new note to defendant for the full amount due, with his wife as surety, and pledged the stock of plaintiff contrary to the written agreement. Up to this point there is no doubt that the position of the plaintiff is unassailable.

It is further contended, however, that plaintiff ratified the action of Holland in pledging his stock to secure the W. C. Henderson note, by accepting the note of Holland with his wife as surety. Holland testifies, as stated, *supra*, that plaintiff specifically agreed to accept his wife as surety and authorized him to pledge the stock. This the plaintiff denies *in toto*, and it is this conflict the jury has decided in favor of the plaintiff. As we deem the decision of this point a decision of the pivotal question, we do not deem it necessary to enter into a discussion of the legal questions involved in regard to estoppel. We do not think, therefore, that there is any merit in this assignment of error.

The next assignment of error is as to the admissibility of the evidence of C. A. Foster, W. R. Davis and C. E. Tucker, witnesses for the plaintiff.

This assignment, as it relates to the testimony of the plaintiff, has heretofore been disposed of.

[3] W. R. Davis, cashier of the First National Bank of Brookneal, testified in brief that in June, 1923, W. C. Henderson sought a loan from the bank in a sum not to exceed $3,000.00, with which to make a contemplated purchase. That during the conversation in regard to

the loan, Henderson stated that W. R. Holland was indebted to him in the sum of $3,250.00, and that he had the stock of the Barksdale-Foster Hardware Company of the value of $7,500.00 as collateral security which he could sell in case the debt was not paid.   The offer of this stock by Henderson was communicated to plaintiff by Davis.   This evidence was admitted to show how the plaintiff first ascertained that his stock had been pledged to secure this additional debt and to corroborate the statement of plaintiff, that as soon as he acquired this information he went immediately to defendant and offered to pay the first loan and demanded his stock.   But for this evidence the jury might readily have come to the conclusion that the defendant was correct in his contention that plaintiff had quietly waited for over twelve months and made no objection to the stock being held as defendant claimed he had a right to hold it.   It was also admissible to throw light on the true ownership of the W. C. Henderson note.

C. E. Tucker, while testifying for the plaintiff, was permitted to testify over the objection of the defendant as follows:

"Q. Did Mr. Frank Henderson at any time ever write to you all concerning the interest on the note?

"A. No, sir."

This testimony was also offered to throw additional light on the ownership of the W. C. Henderson note.

[4] It is urged by counsel for defendant that the question of ownership of this note could only arise between W. C. and F. H. Henderson.   We cannot agree to this. If defendant is not the owner of the W. C. Henderson note, he had no right to demand of plaintiff the payment of the same before he would surrender the stock first pledged to secure his own debt.   The evidence shows conclusively there has never been any transac-

tions whatever between W. C. Henderson and plaintiff as to securing the payment of the note, and it is not contended that the stock was pledged to secure a debt owned by W. C. Henderson.

[5] Harry Foster testified as to finding the agreement in the safe of plaintiff and as to the conversation between plaintiff and himself in regard to the John T. Holland note. This evidence, while self-serving and immaterial, could not possibly have prejudiced the defendant and is therefore harmless error. We do not think the trial court committed error in permitting this evidence to go to the jury.

The next assignment of error calls in question the action of the trial court in giving instructions on its own motion and in refusing instructions tendered by the defendant.

The law of instructions has been elaborately dealt with by this court in numerous decisions.

[6, 7] In *Higgins* v. *Whitmore*, 116 Va. 414, 82 S. E. 180, it is said: "The real object of instructions is to enlighten the mind of the jury on the law of the particular case, and where the court can see that the object has been accomplished and the law of the case has been fairly submitted to the jury, it will not inquire whether it was done by one instruction or by more than one."

Among the many cases dealing with this subject may be mentioned: *Going's Adm'x* v. *Norfolk, etc., R. Co.*, 119 Va. 543, 89 S. E. 914; *Ratcliffe* v. *Walker*, 117 Va. 569, 85 S. E. 575, Ann. Cas. 1917-E, 1022; *DuPont, etc., Co.* v. *Snead's Adm'r*, 124 Va. 177, 97 S. E. 812; *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384; *Rosenberg* v. *Turner*, 124 Va. 769, 98 S. E. 763; *Abernathy* v. *Emporia Mfg. Co.*, 122 Va. 406, 95 S. E. 418; *Seaboard & R. R. Co.* v. *Vaughan's Adm'x*, 104 Va. 113, 51 S. E. 452; *Norfolk, etc., R. Co.* v. *Spates*, 122 Va. 69, 94 S. E. 195;

*Wilkinson* v. *Allen*, 136 Va. 607, 118 S. E. 94; and the recent case of *Wilson* v. *Brown*, 136 Va. 634, 118 S. E. 88, in which Judge Burks deplores the multiplication of instructions as not tending to enlighten the jury, and is a practice to be avoided.

[8] (1) Instruction No. 1 is erroneous in this, it contains the statement that F. H. Henderson was entitled to notice of the lack of authority of Holland to pledge the stock anew.  It is ordinarily true that where stock is endorsed in blank the holder thereof is presumed to be the true owner.  In this case the stock had been in the possession of the defendant for ten months, with full knowledge that it was the property of plaintiff and that it could not be further pledged without the assent of plaintiff.  Knowing this, defendant sent Holland as his agent to secure such assent and if the same was not procured, the burden of the loss occasioned by the unfaithfulness of his agent must be borne by him, and there was no error in refusing this instruction.

[9] (2) That part of the instruction which states that the note was to be executed and delivered to plaintiff, before W. R. Holland was authorized to pledge same to defendant, is erroneous as he had the stock in his possession at the time and it was purely a question as to whether or not defendant could hold the stock as a further pledge for the W. C. Henderson note.

(3) If the instruction given by the court of its own motion is correct, it fully covers this instruction.

(4-5-10-11) These instructions deal with the subject of tender and will be discussed when that branch of the case is reached.

[10] (6) This instruction ignores the conditions contained in the written agreement of March 23, 1922, without any reference to the alleged subsequent ratification of the pledge of the stock by Holland.

[11] (7) There was no error in refusing this instruction, because it tells the jury that defendant had the absolute right to hold the stock regardless of the conditions imposed when he first possessed the stock.

[12] (8) This instruction is erroneous because it assumes that defendant was the *bona fide* holder of the stock as security for the W. C. Henderson note, though he admits that he knew Holland had to get the consent of the plaintiff before he could pledge it as such security.

[13] (9) This instruction ignores the information possessed by the defendant as to the purpose for which the stock was pledged in the first instance, and seeks to make it appear that at the time Holland went to see plaintiff in regard to the second loan, that the stock was then in plaintiff's possession and that he *then* endorsed it in blank and delivered it to Holland, when as a matter of fact such is not the case.

[14] (12) We do not find any evidence in the record to justify the giving of this instruction.

As instructions 4, 5, 10 and 11, tendered by the defendant and refused by the court, and instruction "A" given by the court of its own motion, raise the legal question as to what is a "tender," we will not attempt to deal with these instructions *seriatim.*

In the brief of counsel for the plaintiff this concession is made: "We do not contend that Foster actually produced and tendered the money to F. H. Henderson to pay the balance on the $2,750.00 debt, for this was not done. We do contend, however, that Foster did all that the law required him to do in this connection, he offered to pay whatever balance was due on the $2,750.00 debt, but before the money, or check, could be produced and tendered, Henderson declared he would not receive it, unless the $3,250.00 debt was also paid."

Upon the calling of the case for trial on the 18th day of October, 1923, the plaintiff (as shown by the order entered) "tendered to the defendant and paid into court the sum of $1,640.00, that being the amount, as he contends, to secure the payment of which the shares of stock sued for in this case were pledged."

The contention of the defendant is, that whether or not the defendant had the right to hold the stock in question until the whole debt claimed was paid, the plaintiff never having actually made a tender of any amount as required by law, the institution of his action of detinue was premature, and that the payment of money into court by a plaintiff is unauthorized by statute.

[15, 16] This clearly presents the question of the correctness of the instruction given by the court.

It is unnecessary to cite authority to show that an action at law cannot be maintained before the cause of action matured.

"It is said that in order to maintain the action of detinue these points are necessary: (1) The plaintiff must have property in the thing sought to be recovered; (2) he must have the right to its immediate possession; (3) it must be capable of identification; (4) the property must be of some value; (5) the defendant must have had possession at some time prior to the institution of the action." Burks Pleading & Practice, page 210.

[17] Tested by this rule, the plaintiff has certainly met conditions 1, 3, 4 and 5.

In 38 Cyc., page 179, the law is thus stated: "Where the facts are in dispute, it is for the jury to say whether a tender was made, or waived, or made to the wrong person, or whether the sum tendered was in full satisfaction and received on those terms, or was made to buy peace, and, generally, the question as to whether a

tender was made conditionally is for the jury.    But the question whether the money has been brought into court is for the court to determine as an act done in its presence and shown by the records, and where the facts bearing upon a question of tender are uncontroverted, the question whether a tender has been made is purely a question of law."

[18] There being no dispute as to what occurred between the parties litigant on the question of tender, the court in instruction "A," instead of leaving the question open for the jury to pass upon, could, as a matter of law, have told the jury there was a tender under the evidence.

[19] It was incumbent on the plaintiff to offer to pay the debt due.    As the jury, by their verdict, have said that Holland was not authorized to pledge the stock for the W. C. Henderson note, the only debt due was the balance on the note of defendant.    This amount, both the plaintiff and his attorney offered to pay the defendant.    This offer the defendant declined, not because the money was not actually produced, but because he claimed that a larger amount was due him than the amount offered, to-wit, the W. C. Henderson note.

[20] The actual production of the money will be dispensed with when the party to whom the offer is made refuses to receive the money before it is actually produced, and bases his refusal, not on the ground that it is not produced, nor on the ground that the amount produced is not the exact amount, but on some collateral and entirely distinct ground.    *Koon* v. *Snodgrass*, 18 W. Va. 320; *White* v. *Dobson*, 17 Gratt. (58 Va.) 262; *Lohman* v. *Crouch*, 19 Gratt. (60 Va.) 344.

In 26 R. C. L., page 264, the law is stated thus: "Since the law does not require anyone to do vain or useless things, a formal tender is never required where

it appears if it had been made, the money would not have been received, as where a creditor states that an actual tender will be useless because he will not accept it."

[21] The defendant having refused to receive the amount afterwards found by the jury to be due, the plaintiff, at the time of the institution of the action, had met the requirement that (2) "he must have the right to its immediate possession." Thus being in the position to institute his action of detinue, he had the right to pay the money into court and stop the running of interest, as well as to secure to the defendant the amount due him.

We are, therefore, of the opinion that the action of the trial court in refusing instructions 4, 5, 10 and 11 and in giving instruction "A" is without error.

Upon the whole case, we are of the opinion that the judgment of the circuit court should be affirmed.

*Affirmed.*