# 𝔚𝔶𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

### A. Hopson Kirby v. Edna Moehlman.

June 22, 1944.

Record No. 2772.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*I. W. Jacobs* and *W. R. Ashburn*, for the plaintiff in error.

*F. E. Kellam* and *William G. Maupin*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The plaintiff, Mrs. Edna Moehlman, is a married woman whose home is in Dayton, Ohio, and has one daughter about twelve years old. The defendant, Miss A. Hopson Kirby, teaches in one of the public schools in Richmond but owns and operates in the summertime a small hotel or boarding house at Virginia Beach. The defendant Mrs. N. C. Ratcliff, her niece, helps about it but owns no interest.

A jury's verdict, confirmed by the court, went against Miss Kirby for $6,500 but not against her niece. She goes out of the case and need not be further considered.

This plaintiff had been a boarder for hire there for two seasons prior to 1941 and in that year came to it on June 16 and remained there until August 17, bringing with her this twelve-year-old daughter. In the afternoon of July 6, between six and half-past six, she fell from this hotel porch and was hurt. On May 25, 1942, she brought this action of trespass on the case for injuries she contends she suffered in this wise:

This boarding house, known as Idlewyle Hotel, faces the ocean, as does its porch, about 12 feet wide without railings. On it were chairs along its four sides facing inward. One of these rows was near its ocean edge. After plaintiff had finished dinner and a little after six o'clock, she came out a door opening on the porch. Some chairs there were already occupied, but one on the near end of the outside row was not. She walked diagonally across the porch to it, sat down, rocked back, turned over and was hurt. It was then seen there was no rocker on its far side. The chair itself was a low one with a cane seat.

The accident itself occurred on a Sunday, and, on the Saturday preceding, plaintiff's daughter, Judith Moehlman, saw that one of its rockers was entirely missing. These porch chairs were moved and the porch swept at least twice a day by the defendant's servants—once at six o'clock in the morning; afterwards they were replaced.

A jury's verdict, approved by the trial court, settles all matters of fact in dispute unless the sustaining evidence is inherently incredible. In these days when paper is at a premium, we shall not clutter up this opinion by the citation of authorities in support of a rule nowhere questioned.

We now turn to the plaintiff's evidence to see what a jury might have believed.

There was no rocker on the right side of this chair. Her approach, as we have seen, was from its left side. She was asked to tell the jury exactly what happened and said in direct examination:

"My little girl come out on the porch first. She had a bike on the side, and I saw the chair and I thought I would sit down there while she locked her bike and took it off the porch. I sat down in the chair and started rocking, and rocked back and took my feet up and I come down right on the shrubbery and was pulled up by a man, Mr. Rutty, I think. I am not sure I am pronouncing it right; and I could feel something happen to my back. When they brought me up in the chair I told them I had to sit there because I was in so much pain, and when I looked down the rocker was off. It was not split. It was gone. I sat down in a chair with one rocker. Since then I have suffered during the time and still am. What I went through with nobody will ever know."

And on cross examination she said:

"Q. You came out on the veranda and sat down to rest and relax, sat down near one or more guests, did you not?

"A. Right.

"Q. It was Mr. Rutty who was sitting very close to you?

"A. Caty-cornered from me.

"Q. Perhaps as close to you as I am to the stenographer here, or closer?

"A. Yes, I would say a little closer.

"Q. You were talking with him?

"A. I didn't have time to talk to him. All of this—it all happened at once. I walked across and sat down in the chair and started to rock and just went right back down. I didn't start to talk to anybody, didn't have time to. It happened immediately. * * *

"Q. If I understand you correctly, you say that on the righthand side the chair was sitting down on its two posts just as though it were a straight chair, and had no rocker?

"A. Will you say that again?

"Q. If I understand what you are telling us, on the righthand side of the chair the rocker was entirely off?

"A. Yes, when I was brought up in the chair. I sat down in the chair and I didn't know it had a rocker off. I didn't go around and examine it, look at the bottom of the chair. It was vacant and I sat down because it was vacant.

"Q. There was no rocker on the righthand side?

"A. That is right.

"Q. Consequently the two posts on the righthand side of the chair were resting on the floor just as though it were a straight chair?

"A. Yes."

"I walked across and sat down in the chair and started to rock and just went right back down. I didn't start to talk to anybody, didn't have time to. It happened immediately. * * * "

Counsel for the appellant stated in substance that the testimony of Mrs. Moehlman is contrary to human experience in three particulars.

(1) He says she states that she walked across the veranda for a distance of 12 to 15 feet toward the rocking chair and seated herself in it without noticing that it had no rocker on one side although it was then broad daylight and the absence of the rocker would naturally cause the chair to be

lower on one side than the other and the absence of the rocker would be open and obvious.

(2)   He states that she testified that after seating herself in the chair she had no sensation that it was uneven or that the rocker was off on one side.

(3)   He states that she said that after she had seated herself she proceeded to rock backward without having discovered any unusual condition of the chair.

█   Counsel's first proposition does not contain a complete statement of the facts.   He does not consider therein that part of the testimony of Mrs. Moehlman which shows that the rocker was missing on the side of the chair farthest from Mrs. Moehlman as she approached and that the chair was placed in a row of chairs which to some extent at least, must have obstructed her view.   When Mrs. Moehlman says that she did not observe the defect in the chair we cannot say, under all the facts and circumstances, that her statement is inherently incredible.   We must remember that she was a paying guest at the hotel and they owed her the duty of supplying a suitable and safe chair free from defects.   She was not called upon to examine the chair before she sat in it. It is not unreasonable to believe that a person, in the exercise of ordinary care, would fail to see such a defect in the chair.   It would at least present a jury question.   She said that there was nothing about the angle of the chair to indicate that the rocker was absent.

█   Counsel argues that the absence of the rocker naturally caused the chair to tilt to one side and that Mrs. Moehlman should have observed it; that this alone made the defect open and obvious to her.   We have closely examined the broken rocker, which was an exhibit, and it discloses that the rocker was about two inches wide and one inch thick, that the two posts of the chair were imbedded in the top side of the rocker and extended entirely through it, and that the rocker, from use or other cause, was almost flat on the floor side.   From this the jury could have believed its absence would have caused very slight tilting on that side of the chair, certainly not more than an inch.   The jury could

have found that the tilting caused from such a slight difference in the two sides of the chair would be so small that it would likely be unobservable to any one unless he exercised extraordinary care, which of course was not required. We therefore think that Mrs. Moehlman's testimony to the effect that she did not observe the absence of the rocker and did not observe the tilting of the chair, was not, as a matter of law, unworthy of belief.

Mrs. Moehlman testified that after she seated herself she proceeded to rock backward without discovering any unusual condition of the chair. She said: "I walked across and sat down in the chair and started to rock and just went right back down." Again she said: "I sat down in the chair and started rocking and rocked back and took my feet up and I come down right on the shrubbery." Common experience and knowledge tell us that this might reasonably have happened just as she stated. It certainly is not beyond the realm of what ordinary fair-minded men might believe. It could not be said logically that this testimony is contradicted by the laws of physics or the physical facts, or that it is inherently incredible.

When may the court, as a matter of law, pronounce the testimony of a witness, upon which a verdict has been reached, manifestly untrue, impossible, unworthy of belief, contrary to physical facts, common observation and experience, and inherently incredible? Simply because it is not plausible will not suffice, nor will it suffice simply because a judge might not have believed it if he had been on the jury. Probabilities are not sufficient, neither will the lack of reasonableness of the testimony of the witnesses always justify the pronouncement. An excellent statement of the rule is found in 20 Am. Jur., Evidence, sec. 1183.

This is not a case in which we may say that the great weight of evidence is against the verdict, as was true in *Upton & Co.* v. *Atlantic Coast Line R. Co.*, 146 Va. 475, 131 S. E. 827. In fact, here there were only two eyewitnesses, the plaintiff and a Mr. Rutty. Their testimony was in conflict. He said she did not fall off the porch, while

she said she fell off the porch and into the shrubbery. The fact that the rocker was defective and that she fell and sustained serious injury is not disputed.

In any aspect or view of the case, we finally get back to the proposition of whether the jury or the court should say that her testimony is or is not manifestly untrue. We think that it was a jury question.

It is said that the defendant is not an insurer and that her duty was only to use ordinary care and prudence to render the premises reasonably safe for the plaintiff's use. She was an invitee but that does not tell the whole story. The duty to protect one is necessarily co-extensive with the invitation.

In *Eastern Shore of Virginia Agricultural Ass'n* v. *LeCato*, 151 Va. 614, 144 S. E. 713, Crump, P. (who, the draftsman of this opinion may say in passing, was a great judge), has embodied in it this principle:

"In dealing with the care due to an invitee, and the exercise of care by him, regard must be had to the character of the invitation. They may be entitled to a high degree of protection. *Davis Bakery* v. *Dozier, supra* [139 Va. 628, 124 S. E. 411]. The plaintiff in the instant case was not merely invited to enter the grounds. By the placing of seats around this tree, he was specifically invited to make use of a seat so provided, and had a right to assume that in being seated and in leaving his seat, the arrangement was so constructed as to be sound and stout, and could be safely used. While the common definition of negligence is the failure to use such care as an ordinarily prudent person would exercise under the same or similar circumstances, still negligence is a relative term and the degree of care in fact should be greater or less commensurate with the circumstances."

"The responsibility for the premises is primarily on the innkeeper, and the guests may generally assume that they are safe." *Baker* v. *Dallas Hotel Co.*, 73 F. (2d) 825. In that case it was held that negligence and contributory negligence were properly jury questions, as we held in *LeCato's Case*. *Topley* v. *Zeeman*, 216 Cal. 182, 13 P. (2d) 666, is a case in which a guest was injured in using a

bathtub partially supported by wooden blocks. The lower court held that the plaintiff was guilty of contributory negligence as a matter of law but was reversed on appeal, where it was held that it was a jury question.

In *McDowell* v. *Rockey*, 32 Ohio App. 26, 167 N. E. 589, attention is drawn to the distinction between an innkeeper's liability to an ordinary invitee and to a paying guest. See also, *Lusk* v. *Peck*, 132 App. Div. 426, 116 N. Y. S. 1051, 1054.

The qualified duty of ordinary care may become an absolute duty and does become an absolute duty where a proprietor knew or should have known of a danger that might have been easily removed. Such was the situation in the instant case.

Next it is said that the court erred in rejecting this instruction tendered on behalf of the defendant:

"The court instructs the jury that as to the issue of contributory negligence, if they believe from the evidence that the unsafe condition of the chair in question was open and obvious and should have been discovered by a person situated as the plaintiff was, in the exercise of reasonable care and prudence, then the plaintiff was guilty of contributory negligence in sitting in said chair, and you should find your verdict for the defendants."

The court had already twice instructed the jury on this subject. In plaintiff's instruction No. 2, it is said:

"She was under no obligation or duty to make an inspection of a chair furnished for guests by the defendant which she was about to use unless the unsafe condition of said chair was so open and obvious as to be apparent to a person exercising due care for her own safety."

And in plaintiff's instruction No. 3, it was again said that the plaintiff was entitled to a verdict if she "did not know of the unsafe condition of said chair, and that its unsafe condition was not so open and obvious as to be apparent to a person exercising reasonable care."

In *Higgins* v. *Whitmore*, 116 Va. 414, 82 S. E. 180, it is said:

"The real object of instructions at last is to enlighten the minds of the jury on the law of the particular case; and where the court can see that that end has been accomplished, and the law of the .case fairly submitted to the jury, it would be beside the mark to stop to inquire whether it was done by one instruction or by more than one."

In *Wilson* v. *Brown*, 136 Va. 634, 118 S. E. 88, Judge Burks said:

"The multiplication of instructions does not tend to enlighten the jury, and is a practice to be avoided."

In *Henderson* v. *Foster*, 139 Va. 543, 124 S. E. 463, this proposition was affirmed by Chief Justice Campbell, citing eleven Virginia cases, and is reaffirmed by Mr. Justice Spratley in *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 16 S. E. (2d) 389.

We do not think that the jury could have been misled, and we may with confidence assume that able counsel hammered down on the jury the importance, from the viewpoint of the defendant, which attaches to a danger open and obvious.

Reiteration is objectionable for another .reason—it tends to overemphasis. If a court were six times to tell a jury that the accused is presumed to be not guilty, a jury in fact might think that he was not guilty, and certainly they might think that the court thought that he was not.

There are other objections to this instruction. It concludes with a direction to find but makes no mention of the qualification which we have just noted.

Again as was pointed out by Mr. Justice Eggleston in *Knight* v. *Moore*, 179 Va. 139, 18 S. E. (2d) 266, it was not plaintiff's duty to use reasonable care to "discover" a possible peril. Whether or not she did use that degree of care which we have indicated rested upon her was for the jury.

It is next said that the jury was made to understand that the defendants were protected by insurance. There is nothing in the record to sustain this contention.

It is said that no causal connection has been shown

between the accident and the injury. Plaintiff, up to the moment that she was hurt, was an athletic woman in vigorous health. From that moment until this she has been sick and suffering. She has paid to doctors and to hospitals more than $1,000. She wears a special corset and sleeps on a bed made to order for her. The evidence is that one of the vertebrae of the lower end of her spine has been dislocated. All of this may possibly have come about dating from an afternoon of July 6, 1941, and from some unknown independent cause, but the jury did not believe it. They coupled up the injury with the accident.

Objection is made to the fact that the doctor was permitted to tell what Mrs. Moehlman said to him when she came for treatment. It is almost a universal custom among women, and even among men, to begin their conference by telling how their trouble came about and this to every practitioner of the healing art, unless he chances to be a veterinary.

Our conclusion is that plaintiff's account of her accident is not incredible; that contributory negligence has not been shown; that there is no error in the instructions, and no reversible error in the admission of evidence. The verdict of the jury, confirmed by the court, must be affirmed.

*Affirmed.*