COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, AtLee and Callins
Argued at Richmond, Virginia


JAMES BURGESS

v.      Record No. 0877-23-2

SYP HOSPITALITY, LLC

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
SEPTEMBER 24, 2024

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

Darrell J. Getman (Jonathan E. Halperin; Brody H. Reid; Halperin
Law Center; Reid Goodwin, PLC, on briefs), for appellant.

John P. O'Herron (Peter S. Askin; *Thompson*McMullan, P.C., on
brief), for appellee.


This appeal arises from a premises liability claim asserted by James Burgess against SYP

Hospitality, LLC.  After a two-day trial, a jury found in favor of SYP.  On appeal, Burgess argues

that the circuit court erred by granting a jury instruction that was incorrect, issuing contradictory

jury instructions, sending the issue of contributory negligence to the jury, and allowing SYP to

argue that his preexisting medical conditions contributed to his fall and resulting injuries.  For the

following reasons, we disagree and affirm the decision of the circuit court.[1]

I. BACKGROUND

On September 10, 2018, Burgess checked into a hotel room owned by SYP, intending to

shower before dinner.  The hotel bathroom included a bathtub "a little less than two feet" tall, which

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] SYP asks this Court to dismiss the appeal because the record on appeal does not contain
a transcript of a video deposition played for the jury.  Because we find that the transcript was not
necessary to decide the appeal, we deny that motion.

had a "gritty" surface that felt like "grains of sand." The bathtub did not include a bathmat, grab bar, or nonskid strips.

Burgess turned the shower faucet on and let in run for 10 to 15 seconds. While standing outside the rear of the bathtub, Burgess placed his left foot inside the bathtub and began to bring his right foot into the bathtub. Before he was able to place his right foot down, Burgess started to slip. Burgess put his right foot down inside the bathtub to "try to catch [him]self," but he ultimately slipped "less than a second" later.[2]

Burgess sustained a cut to his right foot, which bled "[p]rofusely." He stopped "the vast majority of the bleeding" by applying pressure to the wound and went to an urgent care center the next day. The doctor cleaned his wound, prescribed two antibiotics, provided him with a walking boot, and instructed him to "treat [his] foot very gingerly" and to follow up with his podiatrist. Burgess followed the doctor's instructions.

On October 23, 2018, while his wound was still healing, Burgess discovered that his right foot was "puffy" and "warm to the touch." By the following morning, Burgess's right foot had turned red, and his little toe had begun to turn black and purple. Burgess sought treatment, and doctors amputated the toes and two-thirds of his right foot because of an infection.

Burgess filed a personal injury complaint against SYP, which, as amended, alleged that SYP had negligently failed to remove a "thin and invisible layer of soap" from the bathtub. Burgess also alleged that SYP had negligently failed to install a grab bar or anti-slip bathmat in the bathtub. In its answer, SYP asserted that Burgess had been contributorily negligent in causing his fall. In pursuit of that theory, SYP designated experts to testify about Burgess's preexisting conditions.

---

[2] Burgess testified that he placed one of his hands on the shower rod before entering the bathtub but did not testify as to when he removed his hand. His testimony indicates that he was not holding the shower rod when he fell.

Burgess suffers from diabetes, neuropathy, and Charcot arthropathy in his left foot. Patients with neuropathy "are still able to feel" initially but become "very numb and not able to feel" in their extremities, like their feet, over time. Charcot arthropathy begins with a loss of sensation and leads to collapsed bones in the foot as it progresses, causing instability and affecting balance. Before the incident, Burgess's podiatrist had prescribed him an orthotic "CROW boot [for] his left foot," instructed him to wear it "[a]s much as[] possible," and prescribed "an accommodative orthotic shoe device" for his right foot.[3]

SYP's experts intended to testify that Burgess's neuropathy and Charcot arthropathy "contributed to the [f]all due to lack of sensation causing unsteadiness and [Burgess's] inability to feel the surface of the bathtub." The lack of feeling in his feet "put him at risk for frequent falls and unsteadiness." Additionally, SYP's experts were also designated to testify that Burgess's diabetes, allegedly uncontrolled, put him at an increased risk of infection.

Before trial, Burgess moved the circuit court to exclude expert testimony that his diabetes or other preexisting medical conditions caused his injuries. He also moved the circuit court to bar SYP from arguing to the jury that he had been contributorily negligent in causing his fall. The circuit court denied both motions and ruled that SYP could provide "testimony concerning potential liability and damages issues relating to [Burgess's] pre-existing condition of diabetes."

At trial, Burgess testified about his fall and injuries. He described slipping on a foreign substance on the surface of the bathtub that was "very slick" and "felt like a sheet of ice with baby oil on top of it," which he did not discover until he began to fall. He denied having an opportunity to put his right foot down outside the bathtub before he fell.

---

[3] The record does not disclose what a CROW boot is, but testimony at trial indicated that the wearer retains use of the foot and ankle.

Burgess acknowledged that the arch in his left foot had "collapsed" before the incident, making the foot "flatter," but denied having a "balance problem" beforehand. Similarly, he admitted that his neuropathy "reduce[d] the sensation in [his] foot" but testified that it did "not make it absent by any means." Burgess also testified that diabetics generally "tend to heal slower with wounds."[4]

One of the hotel's housekeepers testified in Burgess's case-in-chief that he cleaned the hotel's bathtubs by washing them with clean water and wiping them with a rag. The housekeeper explained that he would then spray the bathtubs with a "pink liquid" before further cleaning them with another rag. The housekeeper admitted that a hotel guest would receive their room in whatever condition it was in after he finished cleaning.

Dr. Michael Bowen, a podiatrist, testified as an expert witness for SYP. He explained that Burgess's diabetes became uncontrolled[5] and, as a result, he developed neuropathy and Charcot arthropathy. He explained that patients with neuropathy lose the ability "to tell the difference between . . . something that's smooth versus something that's rough" and "are at 15 times greater risk . . . for falls." He also testified that Burgess had a "very high risk" of developing a severe infection in his right foot due to his preexisting conditions, regardless of his fall. On cross-examination, Dr. Bowen acknowledged that he had never personally examined Burgess, and he did not know how unstable Burgess's conditions made him.

After the close of all the evidence, Burgess moved to strike SYP's contributory negligence defense because it had failed to introduce evidence of what he "could have done . . . differently that

---

[4] Burgess also testified that he had an infection in his right foot before his fall. It is not clear from his testimony when his prior infection resolved. Each party, however, introduced expert testimony indicating that Burgess previously sustained a cut to his right foot between 2014 and 2015.

[5] The parties disputed whether Burgess's diabetes was uncontrolled at the time of the incident.

would not have resulted in injury." Burgess further argued that the jury would have had to speculate to find that he had been contributorily negligent and objected to any proposed jury instructions concerning that defense. The circuit court denied Burgess's motion to strike and overruled his objections to the contributory negligence jury instructions.

Burgess also objected to Jury Instruction 16, which provided in relevant part that "[n]egligence is the failure to use ordinary care." Burgess argued that SYP, as the owner of a hotel, owed its guests "an absolute duty," rather than a duty of ordinary care, with respect to dangers that SYP "knew or should have known of . . . that might easily have been removed, remediated, or cured." The circuit court overruled Burgess's objection. The circuit court also issued Jury Instruction 15, which provided in relevant part that "[a]n innkeeper has an absolute duty of care to protect its guests when it knows or should know of a danger to them that might be easily removed."

In closing argument, SYP claimed that Burgess's preexisting medical conditions caused his wound to take "longer to recover" and that Dr. Bowen's testimony showed that Burgess "was at high risk."[6] SYP argued that Burgess had been contributorily negligent because his preexisting medical conditions affected his balance yet he did not request a handicap room or a bathmat. SYP also argued that Burgess had been contributorily negligent because he failed to put his right foot down outside the bathtub after he realized he was slipping. In rebuttal, Burgess responded that he did "what he [could] to try to get his [right] foot down" and that his actions were "not unreasonable."

Following their deliberations, the jury returned a verdict for SYP. The jury verdict form did not specify whether the jury found that Burgess had been contributorily negligent in causing his fall and injuries or whether the jury found that Burgess failed to preponderate his allegation of

---

[6] SYP's closing argument did not specify what Burgess "was at high risk" of.

negligence against SYP. Burgess then moved to set aside the jury's verdict, which the circuit court denied. Burgess appeals.

## II. ANALYSIS

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "[T]he party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Id.* at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)).

### A. *Jury Instructions 15 and 16*

On appeal, Burgess argues that the circuit court erred by submitting Jury Instruction 16 to the jury, as he contends it is an incorrect statement of the law. He also argues that submitting Jury Instruction 15, which was correct, alongside Jury Instruction 16, which was incorrect, "served to mislead and confuse the jury."

"The purpose of jury instructions is to inform the jury fully and fairly about the law applicable to the particular facts of a case." *Hawthorne v. VanMarter*, 279 Va. 566, 586 (2010). "[N]o instruction should be given . . . 'which would be confusing or misleading to the jury.'" *Bista v. Commonwealth*, 76 Va. App. 184, 227 (2022) (second alteration in original) (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 708 (2016)). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Id.* at 675.

Burgess contends that the circuit court erred by giving Jury Instruction 16 because it incorrectly stated the duty of care owed by SYP. Relying on *Taboada v. Daly Seven, Inc.*, 271 Va.

313 (2006), Burgess asserts that SYP owed him an "elevated" duty of care "akin to that of a common carrier and passenger," rather than a duty of ordinary care. He also asserts that Jury Instructions 15 and 16 were inconsistent. We disagree.

An innkeeper is responsible for its premises, and "guests may generally assume that they are safe." *Kirby v. Moehlman*, 182 Va. 876, 884 (1944) (quoting *Baker v. Dallas Hotel Co.*, 73 F.2d 825, 827 (5th Cir. 1934)). An innkeeper's "qualified duty of *ordinary care* may become an absolute duty and does become an absolute duty when a proprietor knew or should have known of a danger that might have been easily removed." *Id.* at 885 (emphasis added). Stated otherwise, an innkeeper has a "qualified duty" of ordinary care with respect to the condition of its premises, which becomes an absolute duty if the innkeeper "knew or should have known of" a hazardous condition that it could easily have eliminated. *Id.*

In *Taboada*, the Supreme Court addressed what duty of care an innkeeper owes to a guest concerning "*criminal conduct* of a third party." *Taboada*, 271 Va. at 324 (emphasis added). By contrast, this appeal does not concern SYP's duty to protect its guests from a third party's criminal conduct. Instead, it concerns a purported dangerous condition on the hotel premises—the foreign substance on the surface of the bathtub. SYP owed Burgess a qualified duty of ordinary care with respect to the safety of its premises. *Kirby*, 182 Va. at 884-85. That qualified duty became "absolute" if SYP knew or should have known of the presence of the foreign substance, and it needed to remediate the condition if it could have "easily" done so. *Id.* at 885. Jury Instructions 15 and 16 correctly reflect the law, and, accordingly, the circuit court did not err by submitting the instructions to the jury.

B. *Contributory Negligence*

Burgess next argues that the circuit court erred by submitting the question of contributory negligence to the jury because SYP failed to introduce evidence that he "could have taken reasonable action to avoid his injury."

"Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances. The essential concept of contributory negligence is carelessness." *RGR, LLC v. Settle*, 288 Va. 260, 283 (2014) (quoting *Jenkins v. Pyles*, 269 Va. 383, 388 (2005)). "[J]ust as a plaintiff is required to establish a prima facie case of negligence, a defendant who relies upon the defense of contributory negligence must establish a prima facie case of the plaintiff's contributory negligence." *Id.* at 284 (alternation in original) (quoting *Sawyer v. Comerci*, 264 Va. 68, 75 (2002)). To establish a prima facie case of contributory negligence, "a defendant must show that the plaintiff was negligent and that such negligence was a proximate cause of the accident." *Id.*

Generally, whether a plaintiff is guilty of contributory negligence is a question of fact "to be decided by the factfinder unless 'reasonable minds could not differ about what conclusion could be drawn from the evidence.'" *Id.* (quoting *Jenkins*, 269 Va. at 389). Before a contributory negligence instruction may be submitted to a jury, however, a defendant asserting contributory negligence must adduce "more than a scintilla of evidence . . . to establish each of the elements of contributory negligence." *Sawyer*, 264 Va. at 75. Burgess contends that SYP produced no evidence to show that he could have taken reasonable action to avoid injury. We disagree.

Burgess suffers from diabetes, neuropathy, and Charcot arthropathy in his left foot. There is conflicting evidence about whether his diabetes was controlled at the time of the

incident. Both neuropathy and Charcot arthropathy cause reduced sensation in limbs. While neuropathy can start with tingling, it can progress to complete numbness. Likewise, Charcot arthropathy begins with a loss of sensation and leads to collapsed bones in the foot. Burgess acknowledged that his conditions caused reduced sensation in his feet and a collapsed arch in his left foot. His condition had progressed to the point where he was prescribed a CROW boot for his left foot. SYP's experts testified that these conditions can affect how an individual feels with their feet, including losing the ability to tell the difference between smooth and rough surfaces, which leads to a significantly greater risk of falls. Burgess testified that he stepped into the bathtub with his left foot. Thus, the evidence established that Burgess stepped into the bathtub, leading with, and planting, his left foot, a foot in which Burgess suffered from reduced sensation and a collapsed arch.[7] The amount of sensation Burgess had at the time of the incident and what role it played is a jury question. A reasonable factfinder could find that Burgess was negligent in leading with his left foot and that this caused the fall. Thus, there was sufficient evidence to send the issue to the jury, and the circuit court did not err.

C. *Burgess's Comorbidities and Increased Risk*

Burgess next argues that the circuit court erred by permitting SYP to argue that his comorbidities, including his diabetes, "significantly increased [his] risk of infection and subsequent need for a partial amputation of his right foot."

But Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The purpose behind this rule "is to require that objections be promptly brought to the attention of the

---

[7] Inasmuch as Burgess did not request a handicap accessible room, the bath/shower enclosure did not have grab bars or a non-slip bathmat. While these facts add to the quantum of evidence regarding contributory negligence, they would not, standing alone, be sufficient.

trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary." *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 131 (1989)).

Burgess did not object during SYP's argument. Even so, Burgess argues that he preserved his objection through his motion *in limine* and oral argument on the motion and that he was not required to renew his objection during the trial. He relies on Code § 8.01-384(A), which provides,

> No party, after having made an objection or motion known to the court, shall be required to (i) make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court or (ii) move for reconsideration in order to preserve his right to appeal a ruling, order, or action of the court, even if such ruling, order, or action is without prejudice to a motion to reconsider.

But Burgess's arguments below sought to exclude any *expert testimony* that his "diabetes or other pre-existing medical conditions caused his injuries." On appeal, he assigns error to the circuit court's decision to permit SYP's allegedly improper *argument* on that same issue. Though the underlying rationale for his arguments may be the same, whether expert testimony is admissible is a different issue than whether defense counsel made improper argument. While Code § 8.01-384(A) does not require Burgess to repeat his objections to the admission of the expert testimony, it does not excuse him from properly preserving a different legal objection. Accordingly, we find that Burgess's argument is not properly preserved under Rule 5A:18.

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court.

*Affirmed.*

- 10 -