## Richmond

M. S. HAWKINS AND L. H. WINDHOLZ, RECEIVERS OF NOR-
FOLK SOUTHERN RAILROAD COMPANY V. GROVER
CLEVELAND BRICKHOUSE.

November 21, 1938.*

Record No. 1981.

Present, All the Justices.

*Rehearing refused January 9, 1939.

The opinion states the case.

*James G. Martin,* for the plaintiffs in error.

*Q. C. Davis, Jr.,* and *Herman A. Sacks,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Brickhouse, the plaintiff in the trial court, the defendant-in-error here, brought suit against the defendant in the trial court, the receivers of Norfolk Southern Railroad Company, the plaintiff-in-error here, founded upon his claim for damages for injuries, received by him on Sunday, March 7, 1937, when he was struck by the defendant's train, composed of an engine and tender and from thirty-five to thirty-eight box cars, some loaded and some empty, which engine, in a reverse position, with the tender in front of it, was pulling the train.

The plaintiff approached the tracks of the defendant by way of a road called Wilson Road and when he reached them he turned to the left and walked thereon between the rails, in the middle of the track, several hundred yards to a point near a switch, when he stepped out of the space between the rails to the end of the ties and walked thereon twenty-five or thirty yards, when some part of the defendant's train struck him on his right shoulder and he fell in a wheel, he thought, which ran over him, crushing his arm which was subsequently amputated. The accident happened a few minutes before six o'clock P. M. The weather was

clear, the temperature was forty-two degrees and the wind was blowing at a velocity of ten miles per hour. The plaintiff was facing the wind, wearing an overcoat, the collar of which was turned up around his ears. He had a hat on and was walking with his head down.

The trial resulted in a verdict of the jury for the plaintiff, awarding him damages in the sum of $8,000.00, which was sustained by the trial court.

The defendant assails the judgment of the court and urges three assignments of error. In our view of the case it is only necessary to discuss one of them, which is the refusal of the court to set aside the verdict and render judgment for the defendant on the grounds that the evidence does not support the verdict and that it is contrary to the law and the evidence, without evidence to support it, and plainly wrong.

It appears that running parallel with each other are three tracks, one of the defendant, another of the Belt Line Railway, and another which was used by several railroad companies. The defendant's track is in the middle. There are clear spaces between each of the tracks, which are safe walkways for pedestrians; these walkways and tracks are constantly used by pedestrians, with the knowledge and acquiescence of the respective railroad companies, particularly the defendant company. The plaintiff has so used them since the time he was a lad, hence he was familiar with the method and manner of their use and purpose.

No one saw the accident and the only witness who testified as to any phase of it was the plaintiff. His account of it is very indefinite, vague and unsatisfactory. In fact, it is so much so as to seriously impair the strength of his case. He does not know what part of the equipment of the train struck him, whether it was the engine or tender, or whether the front or rear wheels ran over him. The following portions of his testimony serve to accentuate his heedlessness and listlessness:

"Q. You were very familiar with this railroad track down there for years?

"A. The railroad track, yes, sir.

"Q. You knew that one of the tracks was the Norfolk Southern main line track, the middle track, didn't you?

"A. Yes, sir."

\*     \*     \*     \*     \*     \*     \*

"Q. You got on the track at Wilson Road?

"A. Yes, sir.

"Q. And turned to your left.

"A. Yes, sir.

"Q. And looked both ways up Wilson Road?

"A. Yes, sir.

"Q. And walked right down the center of the Norfolk Southern main line, didn't you?

"A. Yes, sir, right down the center.

"Q. For several hundred yards, and never did look back?

"A. No, sir, I didn't look back at all.

"Q. And why didn't you look back?

"A. I don't know, sir. I just didn't look back."

\*     \*     \*     \*     \*     \*     \*

"Q. After you had walked down for several hundred yards in the middle of the main line track, you went to the left?

"A. Yes, sir.

"Q. Right on the end of the ties?

"A. Yes, sir."

\*     \*     \*     \*     \*     \*     \*

"Q. Why didn't you step over to your left and get in a place of perfect safety?

"A. Just didn't do it, that is all."

\*     \*     \*     \*     \*     \*     \*

"Q. Were you struck near the switch?

"A. When I got about ten to fifteen yards of it. I was getting ready to step off and I was struck from there."

The afternoon was clear and there was sufficient daylight to see, as the plaintiff's witness, Ernest Felton, expressed it, "anything." He saw the train when it was 200 yards from him. With respect to this fact, the witness testified as follows:

"Q. You could see the train a great way off, could you?

"A. Yes, sir, a right good way.

"Q. You saw it half a mile?

"A. No, sir, I was not a half mile from it.

"Q. How far were you from it? When you came to the railroad and looked up you saw the train immediately?

"A. Yes, sir.

"Q. How far was it from you?

"A. I will say somewhere around two hundred yards.

"Q. You saw it two hundred yards away?

"A. Yes, sir.

"Q. You saw the engine coming down towards you without any headlights on it?

"A. Yes, sir.

"Q. You saw the whole front of the engine and the place where the headlights ought to be, but not lighted?

"A. Yes, sir.

"Q. It was perfectly plain and you could see everything?

"A. Light enough to see anything.

"Q. You heard the exhaust of the engine coming down, the noise an engine makes pulling a lot of cars?

"A. Yes, sir."

The headlights of the engine were not lighted. The bell was not rung, nor was the whistle sounded. The plaintiff testified that he did not hear the noise of the train, and was not apprised of its nearness to him.

This seems inexplicable. It was both visible and audible to his chief witness, though he was deaf to its approach. If he did not take the precaution to turn and look in its direction, of course he did not see it, but why he did not hear it, he only knows, and he does not tell us. He was in the prime of life, just forty-eight years old. He was in good health, active, working regularly in the Navy Yard, and was possessed of good eyesight and hearing.

It will be remembered that he said he was struck when he reached a point about ten or fifteen yards from a switch, and he was at that time getting ready to step off. The statement is a rather nebulous one, but we suppose that

the meaning of it is that he was in a state of mind to step off. Something must have induced this mental condition. It would appear to indicate that something caused him to be conscious of the fact that it would be well for him to get from where he was. It was, however, too late.

It was only a short step to a place of absolute safety, where the walkway was worn and smooth, and the natural place for a pedestrian to be. To believe that he walked several hundred yards on a perfectly straight track, where about him there was a perfectly level terrain with no obstructions in the pathway of sound, without hearing the noise of the type of train already described, is to believe the unbelievable. This is not required under the normal conditions which here obtained.

■ Under the circumstances, the plaintiff was a licensee in his relationship to the defendant. The duty of a railroad company to a licensee is stated in the case of *Hawkins et al.* v. *Beecham,* 168 Va. 553, 191 S. E. 640, in quoting from the case of *C. & O. Ry. Co.* v. *Bullington's Adm'r,* 135 Va. 307, 116 S. E. 237, which in turn quotes with approval head notes 5 and 6, *C. & O. Ry. Co.* v. *Saunders' Adm'r,* 116 Va. 826, 83 S. E. 374, as follows:

■ "5. * * * It is not the duty of a railroad company to have a lookout on its front car, or to make any previous preparation for the discovery of licensees on its track. A bare licensee is only relieved from the responsibility of being a trespasser, and takes upon himself all the ordinary risks attached to the place and the business carried on there.

■ "6. * * * A railroad company does not owe to a licensee the duty of running its train in a particular manner, or at a particular rate of speed, and is under no obligation to keep a lookout on its car, or to ring its bell or to blow its whistle, and the mere failure to do any or all of these things does not give him a right of action." 191 S. E. 643.

■ But the principal case cited holds:

"But where the roadbed is used as a walkway by many people, when this fact is known, reasonable care is neces-

sary—headlights are not; a special lookout is not, neither are movements in any particular manner, for, as we have seen, prevision is not required." See the cases of *Nichols' Adm'r* v. *Washington, etc., R. Co.,* 83 Va. 99, 102, 5 S. E. 171, 5 Am. St. Rep. 257; *Hortenstein* v. *Virginia-Carolina R. Co.,* 102 Va. 914, 47 S. E. 996; *Norfolk & W. R. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846; *Harlow's Adm'r* v. *C. & O. Ry. Co.,* 108 Va. 691, 62 S. E. 941; *Norfolk & W. R. Co.* v. *Stegall's Adm'x,* 105 Va. 538, 54 S. E. 19; *C. & O. R. Co.* v. *Palmer,* 149 Va. 560, 140 S. E. 831.

To take the case under consideration from under the control of the legal principles enunciated in the cases based upon concurring and continuous negligence, there must be some superadded fact or circumstance brought to the knowledge of the defendant that the plaintiff is unconscious of his peril, and extraordinary means, consistent with the conditions present, must be taken to save him from its consequences.

The plaintiff endeavored to find this superadded fact or circumstance in the testimony of plaintiff that he was walking while looking down, facing the wind, with his greatcoat collar turned up about his ears. We do not think this supplies the character of fact or circumstance that is signified. These are personal characteristics or things which the plaintiff employed wittingly and were not of sufficiently potent moment to charge the defendant with notice that he would not make one step to an area of perfect security and safety, as he said he was getting ready to do.

In *Southern Ry. Co.* v. *Bruce's Adm'r,* 97 Va. 92, 33 S. E. 548, in reversing a verdict and judgment against the railroad company where a pedestrian with good sight and hearing walking down its track was killed by a train coming from behind, this court said (page 551):

"The question to be determined in every case of this character is, not whether the plaintiff's intestate's negligence *caused,* but whether it *contributed* to the injury of which complaint is made.

" \* \* \* He heard the noises around him, whereby the hearing of an approaching train was rendered more difficult, yet instead of pursuing his journey upon a convenient, safe and suitable walkway between the railroad track and the fence in front of the cotton mills, he selected the railroad track, itself admonishing him of danger, to walk upon, never looking back or stopping apparently, or listening for a train. Under these circumstances, there was no excuse for his failure to adopt such reasonable precautions to prevent injury to him.

\*      \*      \*      \*      \*      \*      \*

"We are of opinion that the negligence of plaintiff's intestate contributing to his injury must not only be inferred from all the circumstances of the case, but such negligence is apparent from plaintiff's evidence."

The plaintiff urges that this is a case for the application of the doctrine of the last clear chance. Under the circumstances here it is inappropriate and cannot be successfully invoked.

In summation, this court said in the case of *Roanoke Ry. & Electric Co.* v. *Carroll*, 112 Va. 598, 72 S. E. 125, 127:

"There have been numerous cases involving the doctrine of the last clear chance decided by this court, and the underlying principle pervading all of them is that there is something in the plaintiff's condition or situation to admonish the defendant that he is not able to protect himself.

\*      \*      \*      \*      \*      \*      \*

"The doctrine is one of prior and subsequent negligence, or remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of the defendant. Where the negligence of both continues down to the moment of the accident and contributes to the injury, the case is one of concurring negligence, and there can be no recovery."

In the case of *Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A., N. S., 379, this court reversed the

verdict and judgment of the trial court on a demurrer to the evidence where a drayman, who was a licensee, stood still near a track in the town of Orange, and while looking at a C. & O. train which was discharging passengers, was struck by a train of the Southern Railway Company, and said (page 366) :

"Bailey was standing so near the track that some part of the engine of the southbound train of the Southern Railway Company struck him and inflicted the injury. He was looking toward the Chesapeake and Ohio train, from which passengers were alighting. There was a good deal of bustle and stir around him. The engine, in emitting steam, added to the noise and confusion; and he relied upon these, and perhaps some other like causes, to excuse his admitted want of attention, for he expressly says, in answer to the question: 'Was there anything to prevent you walking far enough on the sidewalk to be in a place of safety.' 'A. I don't know whether I was or not. I didn't have just the presence of mind. I wasn't thinking when I stopped there. I didn't know that there was anything coming back behind me. I could have walked further out, but I just happened to be walking along there and stopped. My attention drew to the other train, and I happened to stop at that place. I wanted to see if there was any baggage or something of that sort. Consequently, I did not get there. I stopped for a minute, and that is all that I remember.' There can be no doubt, therefore, that Bailey was guilty of negligence, which continued (d) up to the very moment when he was struck by the train.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"The duty on the part of the defendant's employees to keep a lookout is conceded, but it is shown that there is a corresponding duty upon the part of the deceased to keep a lookout for trains, and if his breach of duty in that respect continues up to the moment of the injury, he cannot recover, for such a case is not one of prior negligence on the part of the deceased, and subsequent negligence on the part of the

defendant, but of concurring negligence on the part of both up to the very instant of the accident.

\* \* \* \* \* \* \*

"We are dealing here with a case where a plaintiff, who could, up to the moment of impact, have placed himself in a position of safety, if he had exercised ordinary care to discover the approaching train, is seeking to recover from the defendant company because, by the exercise of like care, it could have avoided the injury of which he complains; and the question is whether or not a plaintiff can recover of a defendant where they are equally guilty of the breach of an identical duty, the consequences of which continue on the part of both to the moment of the injury."

How strikingly similar were the facts in the cited case to those in the present case; and we think that it is very clear that the same principles of law control the two cases.

It seems needless to cite other cases. The Virginia Reports teem with them. The plaintiff has cited a number of cases which he thinks sustain his contention; but upon examination of them we find that their facts are so dissimilar to those of the case which we are considering that they are of little value to our quest. Some of them are cases involving automobile accidents. The conditions incident to the operation of automobiles, of course, are very different from those pertaining to the operation of railroad trains, and they are so patent that it is unnecessary to enumerate them. Others involve injuries to children, who were of such tender years as to preclude the imputation of negligence. Those cases cited which implicate railroad accidents present facts entirely different from those here, and it is quite elementary to say that an opinion in a case must be read and construed in the light of its own facts.

It is our opinion that the verdict of the jury should have been set aside and judgment entered for the defendant, because the case is one of concurrent negligence continuing up to the moment of the injury, if the defendant was negligent at all.

■ We bear in mind the strength of a case which comes to us with a verdict of the jury and the judgment of the court in favor of one of the litigants. But we have never been hesitant to render a reversal when we think that the judgment is plainly wrong.

We are of that opinion here, and accordingly, we reverse the judgment of the trial court and enter judgment for the defendant.

*Reversed.*

GREGORY, J., dissenting.

The following very pertinent facts are not given their due weight in the opinion of the majority: The train was moving at from six to ten miles per hour. It could have been stopped in nine or ten feet. After the plaintiff had walked several hundred yards down the middle of the track he stepped to his left, clear of the rail, and walked on the ends of the ties of that track for twenty-five or thirty yards apparently oblivious of his danger, and it was while walking on the ends of the ties that he was struck and not while he was walking in the center of the track.

The testimony of the engineer that he was looking ahead is bound to be untrue, because if he had been looking he would have seen the plaintiff in a place of danger on the ends of the ties. The engineer was guilty of gross and wanton negligence in failing to see the plaintiff, and in failing to stop his train, which was moving at only six to ten miles per hour and which could have been stopped in nine or ten feet.

In the opinion of the majority it is said that the testimony of the plaintiff is incredible and unbelievable. I cannot agree with this conclusion.

CAMPBELL, C. J., and HUDGINS, J., concur in this dissent.