## ELI STYRIS, Appellant, *v.* OTIS B. FOLK, RESPONDENT.

No. 3393

July 13, 1943.                    130 P. (2d) 614.

*Morley Griswold* and *George L. Vargas,* both of Reno, for Appellant.

*Lloyd V. Smith,* of Reno, for Respondent.

## OPINION

By the Court, ORR, C. J.:

The appeal in this case was perfected on the 19th day of October 1942. By stipulation the bill of exceptions was settled and allowed January 13, 1943. The transcript on appeal was filed in this court on May

26, 1943, thus there was a failure to comply with the requirements of rule II of this court, which requires the transcript to be filed within thirty days after the appeal has been perfected and the bill of exceptions settled and allowed.

Because of such failure of appellant to file the transcript within the time provided by rule II, respondent has moved to dismiss.

The transcript on appeal was filed before the motion to dismiss was noticed or made. By his failure to move to dismiss before the default had been cured by the filing of the transcript on appeal, respondent waived his right to take advantage of the provisions of said rule II. Squires v. Merganthaler Linotype Co., 60 Nev. 62, 99 P. 2d 20.

We think the decision in the above cited case is sound and should be adhered to.

The motion to dismiss is denied.

### ON THE MERITS

March 6, 1944.                    146 P. (2d) 782

*Morley Griswold* and *George L. Vargas,* both of Reno, for Appellant.

*Lloyd V. Smith,* of Reno, for respondent.

## OPINION

By the Court, DUCKER, J.:

Respondent, plaintiff in the court below, recovered damages in this action for personal injuries sustained by him when struck by an automobile driven by appellant. The trial court entered final judgment on the verdict and denied appellant's motion for a new trial.

The accident happened on Granite street in the city of Reno, between its intersection with West Liberty street on the north, and California avenue, a block beyond on the south. At the time of the accident respondent and a man named Campbell had left the sidewalk on the east side of Granite street near the middle of the block, and were crossing the street. When they reached a point about ten feet from the west curb of Granite street, respondent was struck on the left leg by the right end of the bumper of the automobile, and thrown back towards the middle of the street.

When the accident happened there was a city ordinance of the city of Reno in force and effect which prohibited pedestrians from crossing streets at any point other than at regular street or alley crossings at intersections. This ordinance also provided that every person driving an automobile upon any of the streets shall

drive the same in a careful manner and with due regard to the safety and convenience of pedestrians, and not so driving shall be deemed guilty of reckless driving. By the provisions of the ordinance the place where the accident happened was within a zone in the city where driving an automobile at a rate of speed greater than twenty-five miles per hour was prohibited, and the sounding of a horn on the automobile was required as a warning of danger.

It is contended by appellant that by violation of this ordinance respondent was guilty of contributory negligence, which negligence continuing actively up to the moment of the impact, became, as a matter of law or in fact, the proximate cause of the accident.

The trial court concluded that the doctrine of last clear chance was involved, and instructed the jury accordingly. The instructions given on this phase of the case are as follows:

"There has grown up in our law a certain reasoning process that we sometimes call to our aid in analyzing the facts of an accident case, and which is known as the Doctrine of Last Clear Chance. It is permissible to use the doctrine only after we first find, and you may not use it unless and until you first shall have found, that in the events leading up to the accident in question, both the Plaintiff and Defendant were negligent.

"The Doctrine of Last Clear Chance may be invoked if, and only if, you find from the evidence that these six facts existed:

"First: That Plaintiff, by his own negligence, got himself into a position of danger.

"Second: That thereupon, either it was physically impossible for him through the exercise of ordinary care to escape from the danger, or he was totally unaware of impending danger in his position.

"Third: That the Defendant saw, or by the exercise of ordinary care could have seen, Plaintiff in his position of danger.

"Fourth: That it appeared to the Defendant, or

would have appeared to him in the exercise of ordinary care, that Plaintiff either was unaware of the danger impending in the situation or was unable to escape therefrom through the exercise of ordinary care.

"Fifth: That if Defendant saw Plaintiff, or could have seen Plaintiff by the exercise of ordinary care, that he had or would have had a clear opportunity to avoid the accident and could have done so by exercising ordinary care.

"Sixth: That the Defendant did not use ordinary care to avoid the accident, but by negligent conduct proximately caused the accident.

"If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions the law holds the Defendant liable for any injury suffered by the Plaintiff and proximately resulting from the accident, despite the negligence of the Plaintiff.

"14. In considering the Doctrine of Last Clear Chance, you should keep in mind that it was not intended, and should not be permitted, to violate the basic principle that liability must be founded on both negligence and proximate cause; also that it may not be permitted to set aside the law of contributory negligence.

"A person might negligently get himself into a dangerous position, and while that fact might be an element in a chain or setting of circumstances from which injury thereafter comes, yet it might not be a proximate cause of that injury, because some other efficient agent might intervene to proximately produce the accident. On the other hand, such a person's negligence, or its results, might continue in unbroken effectiveness to the point of producing or aiding to produce the injury. The Doctrine of Last Clear Chance rests on this distinction, and its prime value is to aid us in detecting which of the two conditions existed.

"Thus the Doctrine is invoked to defeat the defense

of contributory negligence only in a case when, after Plaintiff's negligence has put him into a position of danger, its work as an efficient agent of causation ceases, and it does not play a part in proximately causing the accident. When, on the other hand, a person's negligence not only places him in a position of danger, but thereafter it or its effect continues, and as a proximately causing factor, brings about, or helps to bring about, the accident, then the law of contributory negligence applies, and such person may not recover."

■ Appellant's counsel did not object to these instructions, nor except to the ruling of the court in giving them. He has not assigned the ruling of the court as error. He contends, however, that the doctrine of last clear chance is not applicable in any case unless the defendant had actual knowledge of the injured person's perilous predicament in time, by the exercise of ordinary care, to avert the accident; and that in the case here there is no evidence tending to show such actual knowledge on the part of appellant, but that the evidence is to the contrary. We do not agree with this view. It is established by the weight of well-considered authority that actual knowledge in a given case is unnecessary to bring this doctrine into operation. It is enough if the defendant, by the exercise of ordinary care, would have discovered the imminent peril of another in time to avert the accident. Failing in this duty, he is liable under the doctrine. Deiss v. Southern Pacific Co. et al., 56 Nev. 151, 47 P. 2d 928, 53 P. 2d 332; Yellow Cab Corporation v. Henderson, 178 Va. 207, 16 S. E. 2d 389; Ramsey v. Sharpley, 294 Ky. 286, 171 S. W. 2d 427; Leinbach v. Pickwick-Greyhound Lines, 138 Kan. 50, 23 P. 2d 449, 92 A. L. R. 1; Bogan v. Carolina Cent. R. Co., 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418; W. B. Bassett Co. v. Wood, 146 Va. 654, 132 S. E. 700; Kansas City Southern R. Co. v. Ellzey, 275 U. S. 236, 48 S. Ct. 80, 72 L. Ed. 259; 45 C. J. 991, note 17.

As was said in Deiss v. Southern Pac. Co., supra

[56 Nev. 151, 47 P. 2d 931]: "This * * * is * * * the better rule." Indeed the so-called humanitarian doctrine would lose much of its efficacy if a party could escape the consequences of his negligence simply by not seeing where he was going, particularly with a dangerous instrumentality.

Appellant has made an effort to construe the latter case into line with his contention that actual knowledge of the imminent danger of another. in a helpless situation, is necessary to bring the doctrine of last clear chance into play. The effort has not been crowned with success. The court said in that case: "We are fully aware of the numerous decisions of courts of high standing supporting the rule that actual perception by a defendant of plaintiff's peril is necessary to bring a case within the humanitarian doctrine. This court, however, is clearly satisfied that the better rule makes actual perception unnecessary, and that if the defendant 'would have discovered plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise.' (Restatement of the Law, Torts, vol. 2, sec. 479), the case comes within the aforesaid doctrine."

There is no confusion of thought needing construction in that language. We here confirm it. Moreover, it was the law of this state before the decision in Deiss v. Southern Pac. Co. See Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65.

Appellant assigns as error the refusal of the court to give the following instruction: "The plaintiff has not proved facts sufficient to justify you to give a judgment for any moneys against the defendant, and your judgment must be for defendant."

The instruction was refused by the court on the ground that it was clearly against the evidence.

■ Appellant contends that the refusal of this instruction was reversible error because respondent's negligence was established as the proximate cause of the

accident as a matter of law. This tenders the question whether under the facts the court was warranted in submitting the case to the jury by the instructions based on the theory of the last clear chance. Appellant has been unsparing in the citation and discussion of cases in support of his contention, but they afford him little help. They are mostly cases in which the doctrine of last clear chance was either not considered, or if considered, was held inapplicable. An example of the former is Koeppel v. Daluiso, 118 Cal. App. 442, 5 P. 2d 457, in which an ordinance was violated by a pedestrian. An example of the latter class of cases is Meincke v. Oakland Garage, Inc., 11 Cal. 2d 255, 79 P. 2d 91, 92. As stated by counsel for respondent, this case is authority for the position that the violation of an ordinance does not bar a recovery where the facts of the case are such as to bring it within the last clear chance doctrine. The true rule is thus stated in the opinion: "These facts are clear: (1) That plaintiff was violating an ordinance designed to prevent the very character or type of injury which plaintiff received; (2) that the violation of this ordinance continued to the very moment of impact; and (3) that the injury would not have occurred if plaintiff had not been violating the ordinance. Under such circumstances there is no room for reasonable minds to differ and plaintiff's violation of the ordinance becomes a proximate cause of his injury as a matter of law (citing cases) *unless there are facts which bring the case within the last clear chance doctrine.* Girdner v. Union Oil Co., 216 Cal. 197, 13 P. 2d 915." (The italics are ours.)

■ To illustrate the rule adopted by the court in Meincke v. Oakland Garage, Inc., supra, is quoted at length from Girdner v. Union Oil Co., supra, as follows:

" 'Whether or not, therefore, negligence is the proximate or remote cause is, as above stated, a question of fact in each particular case. The doctrine of continuing negligence has no application unless the negligence is the proximate cause of the injury. On the other hand,

if all the elements of the last clear chance doctrine are present and plaintiff's negligence becomes remote in causation, then this doctrine applies. If any one of the elements of the last clear chance doctrine is absent, then plaintiff's negligence remains the proximate cause and bars recovery. But the continuous negligence rule does not apply to a situation in which the last clear chance rule, by the presence of its own elements, is brought into operation. Where these necessary elements are lacking, courts have declared, and rightfully so, that plaintiff's negligence being continuous and contributory with that of defendant bars a recovery. * * *

" 'The element of continual negligence is present in all last-chance cases. If defendant is not able to avoid injuring plaintiff in the exercise of ordinary care, the plaintiff's original negligence continues to be the proximate cause of his own injury, which bars recovery. If, on the other hand, defendant is able to avoid injuring the negligent plaintiff, and negligently fails to do so, plaintiff's original though continuing negligence only remotely contributes to the injury and is not the proximate cause thereof, and hence the applied doctrine, by its own principles, establishes the right of plaintiff to recover notwithstanding the fact that his original negligence would, by its continuing nature, bar a recovery if the doctrine were not applicable. * * *

" 'The real question to be determined in considering cases of the character of the one here involved is whether or not the so-called continuing negligence is the proximate or remote cause of the injury, which question is determined by the application of the principles of the doctrine of the last clear chance itself. * * * When the doctrine applies, plaintiff's negligence becomes remote rather than proximate in causation. If it does not apply, his negligence remains proximate in its causation and will bar his recovery.' "

This is a clear exposition of the correct rule.

In Center v. Yellow Cab Co., 216 Cal. 205, 13 P. 2d 918, 920, the plaintiff, a pedestrian who was crossing

the street, was struck by an automobile. A nonsuit was granted. The defendant, the Cab Company, and the driver contended and the trial court held that, as the evidence showed that the plaintiff's negligence continued up to the moment of the injury and proximately contributed thereto, the last clear chance doctrine invoked by him could not apply. The judgment was reversed by the supreme court. In its opinion the higher court said: "This doctrine (the continual negligence doctrine) is not necessarily controlling in the instant case. The real issue in cases of this character is not whose negligence came first or last, but rather whose negligence, however it came, was the proximate cause of the injury. Whether or not, therefore, negligence is the proximate or remote cause, depends upon the facts of the particular case. The doctrine of continuing negligence has no application unless the negligence is the proximate cause of the injury. If all of the elements of the doctrine of the last clear chance are present and plaintiff's negligence becomes remote in causation, then the doctrine applies. If, on the other hand, any of the elements of the doctrine are lacking, courts have declared, and rightfully so, that plaintiff's negligence being continuous and contributory with that of defendant bars a recovery. But a defendant is never relieved of liability if he has it in his power to prevent injuring another, and this is so whether one is unaware of his peril by reason of his negligence or not. The rule of the last clear chance means just what the words imply, namely, if one has the opportunity of avoiding the injury, he must at his peril exercise it."

To the same effect are W. B. Bassett & Co. v. Wood, supra; Yellow Cab Corporation v. Henderson, supra; Ramsey v. Sharpley, supra.

■ Appellant's contention that the continual negligence rule should apply because of the violation of the ordinance, cannot be allowed. That rule, like the rule requiring actual knowledge of peril, is too harsh to be

consonant with justice. As stated in Yellow Cab Corporation v. Henderson, supra [178 Va. 207, 16 S. E. 2d 393]: 'The antecedent negligence of a plaintiff does not of itself preclude his recovery. Starkly stated, the reason for the rule is this: 'One cannot kill another merely because he is negligent.' "

In other words, a drunken or speedy motorist may not run down a careless pedestrian with impunity.

■ There is no difference in principle as to the effect of negligence whether arising by violation of an ordinance, or by ordinary negligence. In either instance, whether it is the remote or proximate cause of an accident, is a question of fact in each particular case. Girdner v. Union Oil Co., supra. Although, as to the former, the negligence is presumed as a matter of law, yet whether it is the proximate cause of an accident is always a matter of fact. Smith v. Zone Cabs, 135 Ohio St. 415, 21 N. E. 2d 336, 338. In that case, in which the violation of an ordinance was involved, the court said: "However, the negligence which the law attributes to appellant is not, in and of itself, sufficient to preclude his recovery. To operate as a bar, his negligence must be shown as a matter of fact to have had a causal relation to and connection with his injuries. In other words, the negligence which the law here attributes to appellant must be shown to have been the proximate cause of his injuries. Negligence per se and proximate cause are two separate and distinct issues. While one is presumed as a matter of law, the other must, nevertheless, be proved as a matter of fact. Although appellant crossed the street between intersections, in violation of an ordinance, he cannot be held as a matter of law to have reasonably apprehended that in so doing injury would result. Even to a pedestrian, thus crossing, a motorist owes the duty of exercising ordinary care. It is true that such ordinance gives to a motorist the right of way between intersections. However, that right is not absolute but preferential

only, and the motorist is not absolved from his duty of exercising ordinary care for the safety of pedestrians, rightfully or wrongfully on the highway between such intersections. Whether the cab driver in the instant case exercised such care was a question of fact for the jury."

■ If the instructions as to the last clear chance were applicable to the facts of this case the court's refusal to give appellant's requested instruction directing a judgment for him was proper. We think they were applicable.

■■ The accident happened on February 1, 1941, at about 6:45 in the evening. The night was very dark and the evidence as to the light conditions at the scene of the accident is conflicting. Appellant testified that the lights were not sufficient to light up the street; that at the place of the accident the pavement was dark, the background was dark and the men wore dark clothing and hats; that all he saw was a dark object loom up in front of him and felt a thud, and swung around and came to an easy stop about 30 feet from the place of impact; that he was travelling 20 or 25 miles an hour. On the other hand, as to the light at the place and vicinity, there were lights in the center of each intersection, lights on a store near the point where respondent and his companion left the sidewalk to cross the street, evidence of a light in front of the dwelling house on the west side of the street directly opposite the place of the accident. Both respondent and Campbell testified that there was good light in the immediate vicinity of the accident. The latter testified that he was there able to and did write down on an envelope the name and address of appellant and the license number of his car. Besides the lights on appellant's automobile were in good condition and bright. The evidence, therefore, will bear a reasonable inference that there was fairly good light at the place and in the vicinity of the accident, a conclusion which, of course, was for the jury. Moreover, against appel-

lant's testimony and contention as to the dark background which obscured the scene, is the fact that respondent and his companion were within the radius of his vision and lights while crossing from the east side of the street to the point where the accident occurred. "A person of normal faculties * * * is presumed to have heard and seen that which was within the sight and range of vision." Los Angeles & S. L. R. Co. v. Umbaugh, 61, Nev. 214, 123 P. 2d 224, 234.

■ Respondent testified that when he started to cross the street he saw the headlights of appellant's automobile, which was coming from the north at a distance of about 350 or 400 feet, and believed that he had plenty of time to cross the street, that he was struck by the auto when he had reached a point about a step from a car that was parked parallel to the west curb of the street; that just before he was struck his companion, Campbell, who was on his right side cried, "Jump," and jumped in between two of the parked cars; that he started to jump but the car hit him before he could do so. This testimony was substantially corroborated by Campbell. Campbell also testified that when he called to respondent to jump, and jumped himself, he saw the lights of the automobile and saw it after it passed; that it was travelling 50 miles an hour or faster at the time; that as soon as he placed respondent on the sidewalk he ran after the car and came up to it where it had stopped and appellant was alighting from it, which was about 65 steps, or around 180 to 200 feet from where the crash occurred.

Both respondent and Campbell testified after seeing the lights of appellant's car as they started across the street, they did not look again.

Under this evidence we think the question of whose negligence was the proximate cause of the accident was for the jury under the instructions as to the last clear chance. It was within their province to find that appellant was negligent in violating the zone ordinance and driving at excessive speed after dark in a well-travelled

thoroughfare of the city, and but for such speed would have been able to discover respondent in his position of peril in time to avert the accident, and that respondent was unaware of the danger impending in the situation until too late to escape therefrom.

If they believed Campbell's testimony they had a right to find that the appellant was driving approximately 50 miles per hour when he struck appellant. There is corroboration to Campbell's testimony in this regard, by circumstances. The street is only 37 feet wide from curb to curb. According to both Campbell and respondent the place where the latter was hit was about 10 feet from the west curb. They had travelled then 27 feet when he was hit. In the meantime, appellant's car had travelled 350 or 400 feet, which was the distance as estimated by respondent when the lights were first seen as they started across the street. Campbell estimated the distance to be at least as far. Stress is placed by appellant on the fact that respondent never looked again after first seeing the lights of appellant's automobile, as proof of his continuing negligence. We think this was for the jury.

In Smith v. Zone Cab Co., supra, appellant attempted to cross the street without again looking in the direction from which the cab which struck him was approaching after having once looked and observed the approach of the cab at a distance of approximately 285 feet away. Held, "whether his failure to look again was, under the circumstances then and there present, contributory negligence as a matter of fact, is a question for the jury and not for the court."

In Fuentes v. Ling, 21 Cal. 2d 59, 130 P. 2d 121, 122, a case almost parallel in facts to the instant case, the question of plaintiff's negligence contributing to his injury was held for the jury. True the statute in that case only required a pedestrian to yield the "right of way" to a vehicle when he was crossing a roadway at any point other than within a marked crosswalk, or

within an unmarked crosswalk at an intersection. Consequently it was held that the statute was not violated, but it was also held that plaintiff was not guilty of contributory negligence proximately contributing to his injury. The court said: "It cannot be said as a matter of law a pedestrian who crosses a well lighted business street in the middle of the block is guilty of violating the statute or of negligence proximately contributing to his injury when he proceeds on his way after having observed an automobile approaching from a distance of 200 feet, with nothing to obstruct his view or that of the driver."

In that case the plaintiff testified that he observed that the car was coming at a fast speed but thought he could cross in safety. In the instant case, as in that case, there was nothing to obstruct the driver's view of the man crossing the street, and admittedly, the lights of his automobile were bright. In the case, supra, the court further said: "The ability of defendant to stop his automobile within five feet after the collision suggests the improbability of excessive speed, but even if the court accepted the defendant's version in that regard it might have concluded that the defendant was negligent in not observing plaintiff on a well lighted street." We say the jury could have so concluded in this case.

■ The respondent did not walk blindly into danger. He used his eyes and thought he could cross the street in safety. He had a right to assume that the oncoming car would be handled with due care. As was said in Los Angeles & S. L. R. Co. v. Umbaugh, supra: "The law will never hold it imprudent in any one to act upon the presumption that another, in his conduct, will act in accordance with the rights and duties of both."

■ The event proved that respondent misjudged the danger, but it does not necessarily prove that he was guilty of continuing negligence in going forward after observing the approaching car. In other words,

he cannot be held as a matter of law to have reasonably apprehended that in so doing injury would result. As stated in Knapp v. Barrett, 216 N. Y. 226, 110 N. E. 428, 429: "If he has used his eyes, and has miscalculated the danger, he may still be free from fault." The question was for the jury.

As the verdict and judgment find support in the evidence, the refusal of the court to give the instruction directing a judgment for appellant was proper. This disposes of the central point in the case. There was no error in the refusal of other instructions offered by appellant, or in other respects claimed by him.

The judgment and order denying a new trial are affirmed.