## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Miles W. Press

v.

Priscilla Purks

March 28, 1997

Case No. CL96-352

BY JUDGE WILLIAM H. LEDBETTER, JR.

This detinue action presents questions about the manner by which a secured creditor repossessed collateral and allegedly thwarted the debtor's rights to redeem it.

### Facts

In December of 1992, the plaintiff (Press) purchased a registered quarter horse from the defendant (Purks) for $5,500.00. The parties signed a contract dated December 27, 1992, in which Purks retained a security interest in the horse to secure the unpaid portion of the purchase price.

After making payments for a considerable time, Press defaulted. Purks obtained a judgment against Press for the outstanding balance ($1,306.19) on May 15, 1996, in general district court.

On May 31, 1996, Purks repossessed the horse.

When Press learned that Purks had taken the horse from the farm where he boarded it, he telephoned Purks. Press says that he called Purks the next day, June 1, 1996, and told her that he would pay all amounts owed on the judgment. He requested that she return the horse to the boarding farm upon such payment. He further contends that Purks said she would not return the horse until Press paid the judgment for the purchase price balance *and* the

amount of an April 17, 1995, judgment she had obtained against him for training and hauling the horse. (After she had sold the horse to Press, Purks served as a trainer and accompanied his daughter to horse shows, under a separate agreement.)

Purks denies that she had any conversation with Press on June 1, 1996. She says that Press did not contact her until the end of June 1996, at which time he demanded that she return the horse and that he would "have a check waiting" for the amount of the judgment. In a later conversation, she says, she told Press that she had incurred other expenses related to the repossession that must be paid before she would return the horse.

Press initiated this litigation by filing a warrant in detinue in general district court on July 3, 1996. Judgment was entered for Purks, and Press appealed.

The case was tried in this court without a jury on March 11, 1997. The parties stipulated the following facts: (1) that Purks sold and Press purchased the horse by contract dated December 27, 1992; (2) that the horse is registered with the American Quarter Horse Association; (3) that Purks retained a valid security interest in the horse under the terms of the contract; (4) that the horse is a "consumer good" as defined in Article 9 of the Uniform Commercial Code; (5) that Press defaulted on the contract; (6) that Purks obtained a judgment for the unpaid balance of the purchase price; (7) that Purks repossessed the horse on May 31, 1996, without breaching the peace; and (8) that Press paid more than 60% of the purchase price before he defaulted on payments.

According to the evidence at trial, the horse has been in Purks' actual or constructive possession since May 31, 1996, and she has incurred expenses maintaining the horse. She testified that she has not sold the horse because she cannot get the AQHA registrations transferred due to this pending lawsuit.

At trial, Press renewed his tender of the full amount owed for the unpaid balance of the purchase price, plus interest and costs.

Counsel requested the opportunity to submit memoranda. Thus, the case was taken under advisement. The memoranda now have been received and reviewed.

### Applicable Law

Article 9 of the UCC preserves a secured creditor's common law right to take possession of the collateral upon default. Virginia Code § 8.9-503. Repossession may be without judicial process, i.e., "self help," if it can be accomplished peacefully.

Upon repossession of the collateral, the secured party may sell, lease, or otherwise dispose of it in a commercially reasonable manner. After deducting reasonable expenses, the secured party applies the proceeds to satisfy the indebtedness secured by the security interest. The debtor is entitled to any surplus or is liable for any deficiency. Virginia Code § 8.9-504.

Sometimes, the parties are better off without a resale of the collateral. Thus, in lieu of resale or other disposition, the secured party may propose that he keep the collateral as his own, thereby discharging the obligation and abandoning any claim for a deficiency. However, this option is *not* available in the case of consumer goods where the debtor has paid 60% of the obligation and thus has a substantial equity. In such cases, resale within 90 days is compulsory. Virginia Code § 8.9-505.

At any time prior to resale or other disposition of the collateral, the debtor may redeem the collateral by "tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party ... ." Virginia Code § 8.9-506.

"Tender" is a term of art. Obviously, it means more than a promise to perform the existing promise. See Official Comment to § 8.9-506. It is an offer of money; it is the act by which one produces and offers to a person holding a claim or demand against him the full amount due, without any condition. *Black's Law Dictionary* (4th ed. 1957) p. 1637.

If a secured party does not allow the debtor to redeem the collateral as provided by § 8.9-506, or holds and fails to dispose of the collateral within 90 days in cases governed by § 8.9-505(1), disposition may be ordered by the court on appropriate terms and conditions. Virginia Code § 8.9-507.

### Decision

Upon the evidence presented and the parties' stipulations, the court is of the opinion that Purks, a secured party, properly repossessed the collateral, the horse, without breach of the peace on May 31, 1996. However, the court further is of the opinion that subsequent to the repossession, Purks' conduct violated the rights of Press as debtor.

First, the court finds that Press made a proper tender under § 8.9-506 that entitled him to redeem the collateral. The post-repossession conversations between Press and Purks took place over the telephone. It is impossible to know precisely what was said or how it was said. Nonetheless, it is obvious that the substance of the conversation amounted to a tender of fulfillment of all obligations secured by the collateral. Press did not merely promise to perform the existing promise. The existing promise was to pay in monthly

installments of $125.00 plus 12% interest. The tender was for payment of the outstanding balance in full, plus costs and interest. Press attached no condition to his tender except that the horse be returned.

Second, the court finds that Purks improperly refused Press' tender by overburdening the collateral with an additional charge or demand: the amount she was owed for training and hauling. The latter indebtedness was not part of the obligation secured by the collateral. See Virginia Code § 8.9-506. Purks had no right to insist upon payment of that indebtedness as a prerequisite to return of the collateral. In fact, such insistence exonerated Press from actually producing the amount needed to lawfully redeem the collateral. *Henderson v. Foster*, 139 Va. 543 (1924).

Third, the court finds that Purks repossessed the horse without the intention of reselling it. As we have seen, under some circumstances the secured party may propose to keep the collateral and forego any claim for a deficiency. However, where, as here, the collateral is a "consumer good" and the debtor has paid 60% or more of the purchase price, the secured party *must* dispose of the collateral in a commercially reasonable manner within 90 days after repossession unless the debtor expressly agrees to allow the secured party to keep the collateral as satisfaction of the debt. Virginia Code § 8.9-505(1).

Fourth, even assuming that Purks did repossess the horse intending to resell it as required by the UCC, she did not do so within 90 days of the repossession. Although she testified that she tried unsuccessfully to sell the horse several times, it is obvious that any such sale, if it had been successful, would have been improper for several reasons, including the lack of notice to Press as required by § 8.9-504(3).

Fifth, the court rejects Purks' contention that resale was rendered impossible because of the actions of Press in instituting this detinue action and refusing to sign over the AQHA registration. Once he made a proper tender, or the need for actual tender was dispensed with because of the creditor's refusal to accept a proper amount, Press was entitled to redeem the collateral, and this judicial proceeding was justified. Further, Purks could have sold the horse without the registration and regardless of the pending detinue action. According to her own evidence, the horse had a market value of $1,500.00 to $1,800.00 "without papers" (i.e., without the AQHA registration). If the horse had been sold, the purchaser would have been protected against claims of Press as long as the purchaser acted in good faith. Virginia Code § 8.9-504(4).

For the foregoing reasons, Press is entitled to recover the horse upon payment to Purks of $1,306.19, plus interest at 12% through May 31, 1996, plus her costs in instituting the action in which she was awarded judgment, plus $250.00 which the court finds from the evidence to be the "reasonable

expenses of retaking" the collateral. § 8.9-504(1)(a). Because Purks has retained the horse in violation of Press' right of redemption since at least July 1, 1996, she is not entitled to charge costs of keeping the horse for the last eight months.